[Civ. No. 22881.   Second Dist., Div. Three.   Sept. 8, 1958.]

CHARLES H. TARBOX, Appellant, v. BOARD OF SUPER-VISORS OF LOS ANGELES COUNTY et al., Respondents.

S. V. O. Prichard for Appellant.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Respondents.

NOURSE, J. pro tem.*—Appellant here, petitioner below, appeals from the judgment denying his petition for a writ of mandate addressed to the respondent board of supervisors and the county tax collector and dismissing said petition. While the judgment appealed from purports to be based upon an order sustaining a demurrer to the petition without leave to amend, inasmuch as the petition set forth the entire record before the board of supervisors and as the return to the alternative writ issued by the superior court incorporated that record and as the superior court was not entitled to receive any other evidence than that which was before the board (*Fascination, Inc.* v. *Hoover*, 39 Cal.2d 260 [246 P.2d 656]), we treat the judgment as one upon the merits.

The petitioner is the owner of and since October, 1955 has operated a motion picture theater known as the Carmel Museum Theater in the county of Los Angeles. Each year he was issued a license by the county of Los Angeles to conduct the operation of that theater. In March of 1957 petitioner applied for a renewal of his license and, objection thereto having been made by the sheriff of the county, a hearing was held before a referee appointed by respondent board of super-

*Assigned by Chairman of Judicial Council.

visors; and after that hearing, the referee made a written report to the board of supervisors recommending that petitioner's application be denied. The board, without hearing further evidence, adopted the report of the referee and denied the petitioner's application.

The question for decision here is: Did the evidence before the referee, giving that evidence every intendment in favor of the action of the board, justify the board's action denying petitioner a renewal of his license?

The facts as shown by the evidence, viewing that evidence in the light most favorable to the respondent board, are:

The petitioner purchased the theater in question in October, 1955 and from that time until the theater was closed by the police in March of 1957 operated it as a motion picture theater; the theater was operated in the same manner as similar theaters in the county were operated. In the theater he showed only films of high quality and there is no contention that any of them were of a lewd or immoral character or which might induce lewdness on the part of any patrons. From October 25, 1956, until March 17, 1957, 19 men were placed under arrest in the theater during the showing of pictures on charges of violation of section 647, subdivision 5, of the Penal Code (vagrancy, lewd). These arrests were all based upon attempts by the persons arrested to place their hands upon the private parts of members of the sheriff's vice squad (plain clothesmen) who had seated themselves as decoys in the theater. All arrests of the alleged offenders occurred when the theater was dark for the purpose of exhibiting the picture. During the period in which the arrests were made from two to five members of the vice squad attended each performance in the theater. In this period a minimum of 20,000 patrons attended the theater.

When petitioner first learned of the arrests in the theater, on about the 19th of January 1957, he immediately contacted the office of the sheriff and learned the cause of the arrests and he then learned of other arrests that had been made and of the fact that persons of homosexual propensities were among his patrons and that they had attempted lewd acts within the premises. He then attempted to retain deputy sheriffs in uniform to work in the theater during their off hours but after this was first arranged he was advised that it was against the policy of the sheriff's department to permit the sheriff's deputies to take outside employment and that he should get a private detective to do that work. This he did and from

that time on a private detective was at all times on duty in the theater. On several occasions this detective requested persons who were believed to be of undesirable character to leave the theater although no lewd acts were observed. Finally, the defendant engaged the services of a uniformed private patrolman to assist the plainclothes private detective whom he had employed but on the following day the theater was closed by the sheriff on the grounds that it was a public nuisance.

The officer in charge of the sheriff's vice squad testified that 10 of the 19 arrests were made after the employment of the private detective by the petitioner; a darkened theater was "a pretty poor place to make observations of criminal acts"; and that the theater therefore constituted a serious police problem and that the sheriff's office could not properly police it so as to prevent the commission of lewd acts, such as we have heretofore described, by the patrons.

No evidence was offered against the character of petitioner or that the petitioner had knowingly allowed into the theater any person known by him to have committed or attempted to commit any lewd act therein or that he had failed to eject from the premises any such person.

The referee found and reported to the board that 19 arrests for violation of Penal Code, section 647, subdivision 5, had been made during the period of October 25, 1956, to March 17, 1957; that the number of arrests at the theater indicated that a number of individuals with homosexual tendencies frequented "the area"; the semidarkened theater provided an ideal place for the promotion of such activities and that "the surreptitious actions of such persons could well go unobserved by patrons" unless they were personally contacted. He concluded that the activities of the homosexually inclined patrons of the theater clearly established that the continued operation of the theater constituted a public nuisance and was extremely detrimental to the public welfare.

Section 83 of the county licensing ordinance upon which the respondents found their right to deny a license to petitioner reads in part as follows:

"The Board . . . shall not . . . grant, and the Tax Collector shall not issue a license to carry on any business, occupation or activity, *if such business* . . . has been . . . any one or more of the following:

". . . (b) A public nuisance.

"(c) In any way detrimental to the public interest.

"(d) Prohibited by [this is followed by the number and title of the county zoning ordinance]." (Italics ours.)

Section 84 provides that the license may be denied if the applicant is unfit to be trusted with the privileges granted by the license.

It is respondents' contention that the evidence before the referee establishes that petitioner's business was a public nuisance, that it was detrimental to the public welfare and that applicant was shown to be an unfit person to conduct the business. They also assert that due to the presence in the area of persons of homosexual proclivities. the board could find that the theater was not a proper place to conduct a motion picture theater despite the fact that the property was zoned for use for that purpose. None of these contentions can be sustained.

■ The business of operating a motion picture theater is a lawful one of beneficial character and not inherently dangerous to the public and while it may be subject to reasonable regulation it may not be prohibited. (*Central States Theatre Corp.* v. *Sar,* 245 Iowa 1254 [66 N.W.2d 450, 455-457]; 86 C.J.S. 668; 16A C.J.S. 1061-1063; and see collaterally 11 Cal. Jur.2d 561-562.) ■ It is not asserted nor would the evidence sustain such an assertion that petitioner conducted his business in any other manner than motion picture theaters are ordinarily conducted. It is not asserted that he countenanced, consented to or in anywise permitted any lewd or immoral acts upon the premises. It cannot be said, therefore, that the business conducted by him constituted a public nuisance although it may be that the acts of those who gained lawful entrance to the theater might be detrimental to those of the public who observed them or who were molested by these unfortunate deviates. It is their acts which were seemingly beyond the control of either the police or petitioner which were detrimental to the public interests, not the operation of a motion picture theater. The fact that a motion picture theater, being a darkened place, provides opportunity for these persons to assert their unnatural proclivities is true of every theater, motion picture or legitimate, or of any other place to which the public is admitted and which through the nature of the business transacted therein is darkened; and if, because the condition permits of the performance of some lewd act, this makes the place a public nuisance then all such places are public nuisances. To so hold would be absurd.

■ The assertion that the board could deny a license because, although the property was zoned and the building designed for use as a theater, the board could find that it was a wrong location in which to conduct a theatrical business seems to us unsound. The fact, if it be a fact, that an area is frequented by homosexuals could in nowise justify the depriving another citizen of the right to conduct a lawful and harmless business in the area. As we have said, there is no evidence that petitioner permitted anyone to enter his premises who had conducted himself in a lewd manner thereon nor is there any evidence that he admitted anyone of known homosexual proclivities; nor could he have refused admission to persons of that character who had not committed or attempted any lewd act upon the premises, for such persons have a legal right to be admitted to any place of public amusement. (*Stoumen* v. *Reilly*, 37 Cal.2d 713, 716 [234 P.2d 969]; *Orloff* v. *Los Angeles Turf Club*, 36 Cal.2d 734 [227 P.2d 449]; *Nickola* v. *Munro*, 162 Cal.App.2d 449, 454-455 [328 P.2d 271].)

■ Respondents argued that the fact that petitioner was unable to prevent the commission of lewd acts within his premises establishes that he is a person unfit to hold a license to operate such a theater. There is no merit in such a contention. He could not legally refuse admission to any person even though he knew him to be a homosexual unless that person had theretofore committed a lewd act upon the premises; and, it is admitted and shown by the evidence to be an impossibility to police in a darkened theater the surreptitious acts of each patron. The law does not require the impossible. It could be as well contended that the fact that the lewd acts were committed in the theater showed the incompetency of the sheriff's vice squad for if they, by constant surveillance were unable to prevent these acts, how is it to be contended that the petitioner might do so.

The facts in this case are not comparable to those involved in *Kershaw* v. *Department of Alcohol Bev. Control*, 155 Cal. App.2d 544 [318 P.2d 494], or *Nickola* v. *Munro, supra*. In each of those cases the evidence showed that the person holding a license from the Department of Alcohol Beverage Control had so conducted his or her business as to countenance and in fact promote lewd and lascivious acts among the patrons of the licensed premises. The opposite is true here for it is unquestioned that petitioner did not countenance but used every endeavor to prevent such acts upon his licensed premises.

■ The board's power to withhold a license to petitioner

was not absolute. In acting upon petitioner's application it acted in a quasi-judicial capacity and it was required to exercise its discretion in accordance with the law and it was necessary that its decision be based upon sufficient evidence. (*Weiss v. State Board of Equalization*, 40 Cal.2d 772, 775 [256 P.2d 1]; *Stoumen v. Reilly, supra; Riley v. Chambers*, 181 Cal. 589, 595 [185 P. 855, 8 A.L.R. 418].) Here the evidence was insufficient to support the implied findings of the board or its act in denying a license to petitioner and the board's act was an unreasonable and arbitrary denial of petitioner's right to pursue a lawful occupation.

The judgment is reversed with directions to the trial court to issue a peremptory writ of mandate as prayed for in the petition.

Shinn, P. J., and Vallée, J., concurred.