[L. A. No. 26202. In Bank. May 8, 1961.]

JIMMIE FLORES, Appellant, v. LOS ANGELES TURF CLUB, INC. (a Corporation) et al., Respondents.

Julius Weled and Andrew J. Weisz for Appellant.

O'Melveny & Myers, Sidney H. Wall, Allyn O. Kreps, Veatch, Thomas & Carlson and Robert C. Carlson for Respondents.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, Conrad Lee Klein, Deputy Attorney General, Freston & Files, Ralph E. Lewis, Martin and Mamakos and Arthur L. Martin as Amici Curiae on behalf of Respondents.

DOOLING, J.—Plaintiff appeals from a judgment dismissing his cause of action for an injunction against his future exclusion or forcible ejection by defendants from their race track, and denying recovery on plaintiff's cause of action for statutory,[1] general, and special damages for alleged wrongful ejection and assault and battery.

It appears from the record that plaintiff, after purchasing a ticket of general admission and a reserved seat in the grand-

_____

[1]See Civil Code, sections 51-54, set out *infra* at footnote 4, as in effect at the time the alleged causes of action arose.

stand at Santa Anita Race Course on January 22, 1959, was requested by defendants to leave the race track, and, upon his refusal to do so, was forcibly ejected. The ejection was carried out by race track personnel pursuant to Business and Professions Code, section 19561.5, and its implementing regulations, promulgated by the California Horse Racing Board.[2] Section 19561.5, as in effect in January 1959, provides that: "The [Horse Racing] board may, by rule, provide for the exclusion or ejection from the enclosure where horse races are licensed by the board, or from specified portions of such enclosure, of known bookmakers, known touts, persons who have been convicted of violations of . . . this chapter or of the laws prohibiting bookmaking or other illegal forms of wagering on horse races [see Pen. Code, § 337a], and other persons or classes of persons whose presence in such enclosure would, in the opinion of the board, be inimical to the interests of the State or of legitimate horse racing, or both. No such regulation shall provide for the exclusion or ejection of any person on the ground of race, color, creed, or sex. Any person who is excluded or ejected from such enclosure in conformity with such rules may apply to the board for a hearing on the question whether such rule is applicable to him . . . subject to review by any court of competent jurisdiction."[3]

The trial court, finding that plaintiff had been convicted on June 23, 1953, of violating Penal Code, section 337a (bookmaking) and that he was therefore a person whom defendants were duty-bound under section 19561.5 and the racing board's rules to eject, concluded that plaintiff's exclusive remedy respecting future ejection or exclusion was that provided by the statute—an administrative hearing before the racing

---

[2]These regulations appear as sections 2103, 2104 and 2105 in title IV of the California Administrative Code, and provide as follows:

"§ 2103: The following persons are prohibited from participating in any pari-mutuel wagering conducted under the jurisdiction of the California Horse Racing Board: . . . (g) Persons who have been convicted of violating Section 337a . . . the Bookmaking Act, Penal Code. . . ."

"§ 2104: Every person who is prohibited from participating in pari-mutuel wagering under Section 2103 of this code is also prohibited from being present within any enclosure where pari-mutuel wagering is conducted under the jurisdiction of the California Horse Racing Board on any day when such . . . wagering is being conducted."

"§ 2105: . . . The racing association [track] *shall* eject from the racing enclosure any such prohibited person who is found there on a day when racing is being conducted." (Emphasis added.)

[3]Section 19561.5 was reenacted at the 1959 Session of the Legislature without substantive change and now appears in sections 19572 and 19573 of the Business and Professions Code.

board. Since plaintiff had neither pursued nor exhausted this remedy, the court dismissed his injunctive cause of action for lack of jurisdiction. The trial court further found that plaintiff became a trespasser upon his refusal to leave the track when requested by defendants to do so and that defendants had used no more force in ejecting plaintiff than was necessary under the circumstances. It therefore denied plaintiff either statutory damages for wrongful ejection or damages for assault and battery.

Appellant contends, first, that his ejection and exclusion, pursuant to section 19561.5, from race courses where pari-mutuel wagering is conducted, deprives him of rights of equal access to a place of public amusement guaranteed by the California civil rights statutes, Civil Code, sections 51-54, as in effect at the time of his ejection.[4] He also urges that section 19561.5, both on its face and as applied to him, is violative of the equal protection and due process clauses of the Constitutions of the United States and the State of California. (U.S. Const. amend. XIV; Cal. Const., art. I, §§ 11 and 13.)

In *Orloff* v. *Los Angeles Turf Club* (1951), 36 Cal.2d 734 [227 P.2d 449], a case involving facts similar to those presented here, plaintiff was ejected from Santa Anita Park and sought an injunction to prevent his further exclusion. He had a record of seven convictions for bookmaking and related conduct. This court held that the racing board could not validly provide for the exclusion of, nor the race track exclude, solely on the basis of past convictions of bookmaking, persons who had paid or who sought to pay the price of

---

[4]These provisions, in summary, granted all citizens the right to equal privileges and facilities in all places of public accommodation or amusement (§ 51); provided a cause of action for damages for the denial of rights guaranteed by section 51 on grounds of race or color, or ''except for good cause'' (§ 52); prohibited the exclusion of any person purchasing a ticket of admission to any place of public amusement or entertainment unless that person was under the influence of liquor, guilty of boisterous conduct, or ''of lewd or immoral character'' (§ 53); and created a cause of action for damages on behalf of any person excluded contrary to the provisions of section 53 (§ 54).

In 1959 the above sections were amended and recodified, and were consolidated in Civil Code, sections 51 and 52, as the ''Unruh Civil Rights Act.'' Section 51 now provides that all citizens are entitled to the full services and facilities of ''all business establishments of every kind whatsoever'' regardless of race, color, religion, ancestry or national origin. Section 52 recognizes a cause of action for damages for the denial of rights guaranteed by section 51. For discussions of these statutes and their background see generally; Horowitz, *The 1959 California Equal Rights in '' Business Establishments'' Statute—A Problem in Statutory Application* (1960), 33 So.Cal.L.Rev. 260; Klein, *The California Equal Rights Statutes in Practice* (1958), 10 Stan.L.Rev. 253.

admission. The court reasoned that Civil Code, sections 51 and 53, as then in effect, granted all persons the right to equal access and accommodation without mentioning past convictions of illegal wagering activity as one of the permissible grounds for exclusion. It was further held that the term "persons of lewd or immoral character" did not set a sufficiently definite standard for the constitutional exclusion of allegedly undesirable persons unless it were restricted in its application to those who presently performed acts of illegal wagering on race course premises. (36 Cal.2d at pp. 739-741.) The reasoning of the Orloff case was subsequently applied in *Pacific Turf Club, Inc.* v. *Cohn* (1951), 104 Cal.App.2d 371 [231 P.2d 527], where an order granting a temporary injunction to prevent a previously convicted bookmaker from entering a race track was reversed.

However, immediately subsequent to the decision in the Orloff and Pacific Turf cases, the Legislature enacted Business and Professions Code, section 19561.5, vesting increased and more specific rule-making power in the racing board. This development, as conceded by appellant, gives rise to considerations not present in Orloff. Although it is no longer open to question that the Legislature (in Bus. and Prof. Code, sections 19420, 19561) and the state Constitution (art. IV, § 25a) have, in the exercise of the state's conceded police power to regulate race tracks, validly delegated plenary rule-making power to the racing board (*Sandstrom* v. *California Horse Racing Board*, 31 Cal.2d 401, 407-408 [189 P.2d 17, 3 A.L.R.2d 90] ; *Pacific Turf Club, Inc.* v. *Cohn, supra,* 104 Cal.App.2d 371, 373), appellant appears to contend that the Legislature was not competent to restrict through section 19561.5 what he conceives to be his constitutional or common-law rights to equal access to race tracks. It is true that this court in Orloff stated : "The so-called civil rights statutes (Civ. Code, §§ 51-54) do not necessarily grant theretofore nonexistent rights or freedoms. The enactments are declaratory of existing equal rights and provide the means for their preservation by placing restrictions upon the power of proprietors to deny the exercise of the right and by providing penalties for violation." (36 Cal.2d at p. 739.) However, it is clear from the discussion which ensued that the court was referring to a declaration of preexisting statutory, rather than constitutional or common-law, rights to equal access. To the extent that the foregoing statement implied more than that, it would have been dictum.

(See concurring opinion of Justices Spence and Edmonds, 36 Cal.2d at p. 743.)

Moreover, it appears to be the almost universal rule in the United States that in the absence of statute there exists no constitutional or common-law right of access to race tracks or other places of public amusement comparable to the right to accommodation at inns. On the contrary, the common-law right appears to have been one of exclusion on the part of the race track proprietor. (*Marrone* v. *Washington Jockey Club,* 227 U.S. 633, 635-636 [33 S.Ct. 401, 57 L.Ed. 679, 43 L.R.A. N.S. 961]; *Greenfeld* v. *Maryland Jockey Club,* 190 Md. 96, 101-102 [57 A.2d 335, 337]; *Tamelleo* v. *New Hampshire Jockey Club, Inc.,* 102 N.H. 547, 548-550 [163 A.2d 10, 11-13]; *Garifine* v. *Monmouth Park Jockey Club,* 29 N.J. 47, 50-57 [148 A.2d 1, 2-6]; *Madden* v. *Queens County Jockey Club, Inc.,* 296 N.Y. 249, 253-254 [72 N.E.2d 697, 1 A.L.R.2d 1160], cert. den. 332 U.S. 761 [68 S.Ct. 63, 92 L.Ed. 346]; *cf. Greenberg* v. *Western Turf Assn.,* 140 Cal. 357, 360-361 [73 P. 1050].) Accordingly, the rights declared by Civil Code, sections 51-54, are statutory and, as such, are subject to such constitutional change as the Legislature may choose to make. The question, then, is whether the change made by the pertinent provisions of section 19561.5 and its implementing regulations is one which is based upon a reasonable (i.e., not arbitrary) classification of persons having a substantial relation to a legitimate legislative objective (*Lelande* v. *Lowery,* 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109]; *Sibert* v. *Department of Alcoholic Beverage Control,* 169 Cal. App.2d 563, 567 [337 P.2d 882]; *People* v. *Sullivan,* 60 Cal. App.2d 539, 541 [141 P.2d 230]) and one which supplies a sufficiently definite standard of application. (See *Orloff* v. *Los Angeles Turf Club, supra,* 36 Cal.2d 734, 740.)

Appellant, relying on *Vallerga* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 313 [347 P.2d 909], *Stoumen* v. *Reilly,* 37 Cal.2d 713 [234 P.2d 969], and *Tarbox* v. *Board of Supervisors,* 163 Cal.App.2d 373 [329 P.2d 553], contends that section 19561.5 and the regulations thereunder, in providing for the exclusion of persons previously convicted of illegal wagering activity, provides unconstitutionally for a deprivation of rights on the basis of conduct committed at other times and places. In Vallerga, the proprietor of a tavern petitioned to set aside the revocation of his liquor license, which had been revoked under Business and Professions Code, section 24200, subdivision (e), providing for revocation when

the licensee's premises, or a portion thereof, "are a resort for illegal possessors or users of narcotics, prostitutes, pimps, panderers, or sexual perverts." It had been alleged that petitioner's bar was a resort for homosexuals, and this was proved, as permitted under the statute, in part by community reputation. In Stoumen, petitioner also sought to set aside a revocation of his liquor license, which had been revoked pursuant to Alcoholic Beverage Control Act, section 58, prohibiting licensed premises to be used for "purposes which are injurious to the public morals." Petitioner allegedly had allowed his bar to be used as a "hangout" for homosexuals. In Tarbox, petitioner sought to compel the renewal of his theater license, which had been denied under a county licensing ordinance prohibiting issuance where the use of the premises resulted in "a public nuisance" or condition "in any way detrimental to the public interest." It was alleged that petitioner's theater was frequently resorted to by homosexuals.

The courts in all three cases upheld the positions of the licensees. The Stoumen and Tarbox courts reasoned that the statutes involved, in mentioning only resort to the licensed premises for immoral purposes, or reputation for such conduct, failed to set a sufficiently definite standard for license revocation and did not base revocation on the licensees' failure to exclude a class of persons reasonably related to the legislative objective—that is, persons presently conducting themselves improperly *on the premises*. The Vallerga court ordered the revocation set aside because it had been based on testimony as to patronage by homosexuals, rather than on evidence as to improper acts committed on the premises. This construction of Business and Professions Code, section 24200, was deemed necessary to save its constitutionality. The inference which may be drawn from the decisions in the Vallerga, Stoumen, and Tarbox cases is that in regulating the affairs of its licensees (or its citizens generally), the state may not impose upon them the responsibility of governing conditions beyond their control, and may not, by the application of general statutory standards, require them to undertake actions not specifically related to the objective which the state desires to accomplish. Accordingly, the regulated parties in these cases could not validly be divested of their licenses because of the somewhat unrelated past conduct of their customers. ■ Giving full effect to the rule announced in Vallerga, the relation between the past conduct and the evil sought to be controlled is much more obvious and direct in the case before us than was the

relation between the past conduct in Vallerga and the purpose there in question; and the basis of the restriction imposed by the instant statute is not apparently unrelated past conduct of others, but a past conviction for closely related conduct of the regulated party himself. Accepting the reasonableness of the regulation, as we do for the reasons hereafter stated, it would appear difficult to conceive of a statutory standard more definite or more easily applied than that set out in the pertinent portion of section 19561.5—prior conviction of particular offenses.

In examining the rationality of the classification made by the pertinent provision of section 19561.5, the general principle must be considered that "[w]hen the classification made by the Legislature is questioned, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts is presumed." (*Lelande* v. *Lowery, supra,* 26 Cal.2d 224, 232.) And, as pointed out in the briefs of respondents and amici curiae, there exists a great deal of factual data which might easily have led the Legislature to adopt the system of classification present in section 19561.5. The statistics revealing the loss of tax resources to the state through illegal wagering activity, the recidivistic records of convicted bookmakers, the frequent use of the pari-mutuel windows by bookmakers to "lay-off" portions of their bets in order to hedge themselves against the financial disaster of losing on a horse on which they have accepted a large amount in bets and in order to lower the odds on such a horse, and the difficulty of detecting, among the large crowds at the race tracks who are using the betting windows for legal purposes, those who are using them illegally or who are improperly soliciting customers for illegal side bets, may have caused the Legislature to conclude that only by providing for the exclusion of that class of persons which by its proclivities for recidivism in this field of activity had shown itself most likely to indulge in it, could such conduct be effectively eliminated. Similar experience with another field of criminal activity recently led to the passage in the State of New York of legislation barring those previously convicted of *any* felony from holding office in labor unions, soliciting union membership, or handling union funds in the absence of executive dispensation. In sustaining the constitutionality of this legislation against the contentions that it violated the due process and equal protection clauses, and the prohibitions against bills of attainder and ex post facto laws (a contention also made in

passing by the instant appellant) of the United States Constitution, the United States Supreme Court's majority opinion stated: ". . . in the view of Congress and the two States involved the situation on the New York waterfront regarding the presence and influence of ex-convicts called for drastic action. Legislative investigation had established that the presence of ex-convicts on the waterfront was not a minor episode but constituted a principal corrupting influence. . . . In the face of [the] wide utilization of disqualification of convicted felons . . . we cannot say that it was not open to New York to clean up its waterfront in the way it has." (*De Veau* v. *Braisted,* 363 U.S. 144, 157-159 [80 S.Ct. 1146, 4 L.Ed.2d 1109].) ▮ The rationality of legislation so designed having been constitutionally upheld, it would appear fair to say that if those previously convicted of *any felony* may be precluded from activities in which the state has a regulatory interest, where the Legislature has a factual basis from which a rational conclusion may be drawn of a reasonable connection between the fact of prior conviction and the purpose to be accomplished, a statute such as section 19561.5, which bars only those convicted of crimes *directly related* to the activity regulated, from which a similar legislative conclusion may be even more readily drawn, must *a fortiori* be considered to be based upon a rational classification, and therefore constitutional. Thus, appellant's contention that section 19561.5 and its implementing regulations, so far as they apply to him, are unconstitutional and afforded respondents no privilege and imposed no duty to eject him from their premises, is untenable; and the trial court's rulings, based upon these conclusions, were correct.

Appellant further contends that the trial court erred in dismissing for lack of jurisdiction his injunctive cause of action because he had not first exhausted his administrative remedy. The basis for appellant's argument in this respect is twofold: It is first asserted that a litigant cannot be required to pursue the administrative remedy provided by an unconstitutional statute; and second, appellant maintains that the remedy furnished by section 19561.5 and its implementing regulations is either merely cumulative or incomplete and inadequate. Since we have concluded that section 19561.5 is a constitutional exercise of legislative power, the first prong of the argument requires no further discussion.

▮ With respect to appellant's second point, it should be noted that pursuant to article IV, section 25a of the Cali-

fornia Constitution,[5] the Legislature has enacted a comprehensive scheme of legislation designed to regulate almost every aspect of legalized horse racing and wagering. Section 19420 of the Business and Professions Code provides: ''Jurisdiction and supervision over meetings in this State where horse races with wagering on their results are held or conducted, and over all persons or things having to do with the operation of such meetings, is vested in the California Horse Racing Board.'' Business and Professions Code, section 19562 (formerly § 19561) provides that the racing board ''may prescribe rules, regulations, and conditions, consistent with the provisions of this chapter, under which all horse races with wagering on their results shall be conducted in this State.'' The delegation of such rule-making power to the racing board, and the delegating legislation, was upheld in *Sandstrom* v. *California Horse Racing Board, supra,* 31 Cal.2d 401, 413. In implementation of this delegation of power, the racing board has promulgated rules providing for the exclusion of certain persons from places where racing and wagering are held[6] and establishing, under section 19561.5, a system of administrative hearings in order that such persons may be afforded the opportunity to contest its rulings.[7] The results of such hearings are, as provided by statute, subject to judicial review.

In the face of so pervasive a system of administrative procedure, it would appear difficult to maintain that the Legislature did not intend that this system provide the exclusive

---

[5]Article IV, section 25a, provides that: ''The Legislature may provide for the regulation of horse races . . . and wagering on the results thereof. The provisions of an act entitled 'An act to provide for the regulation and licensing of horse racing, horse race meetings, and the wagering on the results thereof; to create the California Horse Racing Board for the regulation, licensing and supervision of said horse racing and wagering thereon; to provide penalties for the violation of the provisions of this act, and to provide that this act shall take effect upon the adoption of a constitutional amendment ratifying its provisions,' are hereby confirmed, ratified, and declared to be fully and completely effective; provided, that said act may at any time be amended or repealed by the Legislature.''

[6]See footnote 2, *supra.*

[7]These regulations provide for daily reports by racing associations to the racing board listing exclusions and ejections and the reasons therefor; application by persons excluded or ejected for a hearing before the Board; place and notice of hearing to determine applicability of rules; appearance, evidence and findings at hearings; notice to applicants for hearing of board determinations; and board hearings to determine the rehabilitation and renewed eligibility to attend race meetings of persons to whom the rules for exclusion have been held to apply. See California Administrative Code, title 4: Horse Racing Board, article 42, sections 2109-2114.

initial recourse for persons aggrieved by the operation of its regulatory legislation. And, in similar instances, the courts have withheld judicial relief from those who have not first availed themselves of the administrative remedies provided. (*United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26] ; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 291-293 [109 P.2d 942, 132 A.L.R. 715] ; *Cardoso* v. *Department of Alcoholic Beverage Control,* 162 Cal.App.2d 277, 278 [327 P.2d 591] ; *Fiscus* v. *Department of Alcoholic Beverage Control,* 155 Cal.App.2d 234, 236 [317 P.2d 993] ; *Louis Eckert Brewing Co.* v. *Unemployment Reserves Com.,* 47 Cal.App.2d 844, 848 [119 P.2d 227].)

Appellant nevertheless argues that the administrative remedy is only cumulative rather than exclusive, and that in any event, it is inadequate. He relies on the Orloff case, *supra,* and on *Jewett* v. *City Transfer & Storage Co.,* 128 Cal.App. 556, 559 [18 P.2d 351], and *Estate of Ward,* 127 Cal.App. 347, 354 [15 P.2d 901], for the former proposition. However, at the time of the Orloff case, the statutory scheme of remedies provided for by section 19561.5 had not yet been enacted, and the Orloff case, while permitting injunctive relief, could therefore determine only that such relief was not precluded by the monetary damage remedy provided in Civil Code, sections 52 and 54. The Jewett and Ward cases are authority only for the proposition that where a statutory remedy is provided for the enforcement of a preexisting *common-law* right, the newer statutory remedy will be considered only cumulative. Since it is clear that there existed no common-law right of access to race tracks prior to the enactment of the civil rights statutes, the reasoning of the Jewett and Ward cases is inapposite here.

 Moreover, the contrary result in this case would conflict with the reasoning of *Fiscus* v. *Department of Alcoholic Beverage Control, supra,* 155 Cal.App.2d 234, 236, that "[t]he doctrine of exhaustion of administrative remedies applies where a statute provides an administrative remedy, even though the *terms* of the statute do not make the exhaustion of the remedy a condition of the right to resort to the courts." (Emphasis added.) In the instant case, the provision in section 19561.5 for judicial review of board determinations would appear *a fortiori* to make exhaustion of the statutory remedy prerequisite to judicial action, at least with respect to relief against future acts.

 Appellant's argument that if the administrative remedy is exclusive, it is incomplete and inadequate, is based

on the misconceived notions (1) that it precludes recovery of the damages allowed by former Civil Code, sections 52 and 54, and (2) that a hearing to determine whether racing board rules of exclusion apply to him leaves no room for administrative discretion because in his case the rules plainly do apply. However, the trial court did not purport to deny appellant damages against respondents because the administrative remedy precluded such a recovery; its determination in this respect was based on findings that respondents were privileged (or indeed, obligated) to ask appellant to leave, and that when he refused, he became a trespasser upon whose person respondents were privileged to, and did, exercise reasonable force to accomplish his ejection. These determinations did not rest on the theory of exclusiveness of remedy, but were judicial findings based upon the merits of appellant's case. The dismissal for lack of jurisdiction applied only to appellant's injunctive cause of action.

The view that the hearing furnished an inadequate remedy merely because in appellant's case the board's rules of exclusion plainly applied, is without merit. If appellant could have offered evidence at a board hearing, for example, that his earlier bookmaking conviction had been reversed, or that he was now a rehabilitated citizen, he could have sought a determination that the board's rules did not or should not apply to him and he would have been free under the board's practice to do so. An administrative remedy is not rendered inadequate by the fact that a particular applicant cannot qualify for relief under it.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.