**Alfred MONES, Plaintiff,**

v.

**Alfred S. AUSTIN, L. B. Walker, L. D. Plante, Fred J. Ackel, James W. Taylor, constituting the Division of Pari-Mutuel Wagering of the Department of Business Regulation of the State of Florida, Tropical Park, Inc., etc., Gulf-Stream Park Racing Association, Inc., etc., and Hialeah Race Course, Inc., etc., Defendants.**

**Civ. No. 70–105.**

United States District Court,
S. D. Florida.

Oct. 15, 1970.

Tobias Simon, Miami, Fla., for plaintiff.

Shelby Highsmith, Miami, Fla., for Austin, and others.

Worley & Gautier, Miami, Fla., for Tropical Park.

Landefeld & Romanik, Hollywood, Fla., for Gulfstream Park.

Walton, Lantaff, Schroeder, Carson & Wahl, Miami, Fla., for Hialeah Race Course.

Earl Faircloth, Atty. Gen., Tallahassee, Fla., for defendants.

## FINAL JUDGMENT

Before SIMPSON, Circuit Judge, CABOT and EATON, District Judges.

CABOT, District Judge:

The complaint in this cause was filed by the plaintiff, Alfred Mones, on January 25, 1970, seeking declaratory and injunctive relief. The plaintiff had been convicted of the crime of bookmaking in New York in 1951 and barred as a patron from the defendant race tracks pursuant to the provisions of Florida Statute 849.24(3), (4), (5), (6), F.S.A. which is enforced by the defendant Pari-Mutuel Wagering Division of the Department of Business Regulation. Plaintiff's attack on the statute is two-fold; first, he asserts that the statute violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, and second, that the legislation is a constitutionally prohibited bill of attainder. A three-judge panel was constituted in accordance with the provisions of 28 U.S.C. §§ 2281–2284, and on May 25, 1970, a pretrial conference was held, at which time the parties stipulated that the only issue before the court is the facial constitutionality of the statute. It was further stipulated that oral argument would be waived and the matter submitted to the panel on the basis of written briefs. The briefs have been received and the matter is ripe for adjudication.

Florida Statute 849.24(3), (4), (5), and (6), F.S.A. provides that:

(3) Any person who has been convicted of bookmaking, and the record of whose conviction on such charge is on file in the office of the Florida state racing commission, any court of this state, or of the federal bureau of investigation, or any person who has been ejected from any race track of this or any other state for bookmaking shall be excluded from all race tracks in this state.

(4) If the activities of an individual indicate that this law is being violated it shall be the duty of every officer,

director, official and employee of the permit holder to investigate the actions of the person, or persons, believed to be violating this law. If after an investigation it shall be apparent to the investigating official that this law has been violated, then such person or persons shall be ejected from the premises of the permit holder and an ejection slip filed with the Florida state racing commission.

(5) Any such person who refuses to leave such track when ordered to do so by any proper authority or any person who has been ejected from a race track or jai alai fronton and an ejection slip filed with the Florida state racing commission who thereafter returns to a race track or jai alai fronton without having been reinstated by the commission is guilty of a misdemeanor and upon conviction shall be punished as for a misdemeanor.

(6) It shall be the duty of each and every officer, director, official and employee of said permit holder to observe and enforce this section.

## EQUAL PROTECTION

 The Fourteenth Amendment's equal protection clause prohibits the states from enacting legislation which unreasonably or arbitrarily discriminates in like situations against one individual in favor of another. The amendment, however, permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently from others so long as the legislative classification rests on grounds relevant to the achievement of a legitimate state objective. McGowan v. Maryland (1961), 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393. In order for plaintiff to prevail he must establish that the group to which he belongs, i. e., convicted felons, is receiving disparate treatment without any rational basis. Plaintiff's burden, it should be remembered, is heavy for the presumption is that the state legislature acted within its constitutional power. Moreover, statutory discrimination of this type may not be set aside "if any state of facts reasonably may be conceived to justify it." McGowan, *supra* at 426, 81 S.Ct. at 1105; McDonald v. Board of Election Com'rs of Chicago (1969) 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739.

The Supreme Court has already recognized that a separate classification for persons previously convicted of a crime is not per se unreasonable. In DeVeau v. Braisted (1960), 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109, the court sustained the constitutional validity of a section of the New York Waterfront Commission Act which prohibited contributions to any waterfront union if an officer of the union had been convicted of a felony, unless he has been subsequently pardoned or has received a certificate of good conduct. The legislation effectively disqualified felons from holding waterfront union office. The appellant contended that the legislation was not a reasonable means for achieving a legitimate state end—elimination of waterfront corruption. While recognizing that the legislation was indeed drastic, the court was disposed to sustain its constitutionality finding that the challenged legislation was but part of a program designed to vindicate a legitimate and compelling state interest, namely, the elimination of the criminal element infesting waterfront unions. The technique employed by the New York legislature, the court observed, has often been used to insure against corruption in certain designated areas. Thus, convicted felons may not serve in the armed forces, 10 U.S.C. §§ 3253, 8253, may not serve upon federal grand or petit juries, 28 U.S.C. § 1861, nor may they hold various United States offices of honor or trust, 18 U.S.C. §§ 202–207. And, relying upon *DeVeau,* the constitutionality of state legislation similar to the legislation in issue has been sustained. Flores v. Los Angeles Turf Club (1961), 55 Cal.2d 736, 13 Cal.Rptr. 201, 361 P.2d 921.

In the present case, unlike *DeVeau,* the statute does not seek to prohibit access to wagering establishments to all felons, but rather only to those who have been

convicted of bookmaking, a crime directly related to an activity, i. e., gambling, which is heavily regulated by the state in the exercise of its power to legislate for the health, safety, welfare, and morals of its citizens. In Florida the legislature has authorized pari-mutuel wagering on certain types of racing and on jai alài. This authorization, however, did not change the public policy of the state in regard to gambling and the operation of gambling houses, that is, that such activities are subversive of the public morals and the suppression of them is a lawful exercise of the recognized authority of the state. Valdez v. State (1940), 142 Fla. 123, 194 So. 388. The public policy of the state as expressed by the legislature in 849.24(3)–(6) requires the exclusion from all race tracks in the state of any person who has been convicted of bookmaking. In a like manner, akin to the *DeVeau* scheme to rid the waterfront of the undesirable criminal element, Florida has legislated against gambling as, for example, by prohibiting one to use a telephone or telegraph for bookmaking and forbidding the keeping of a place for the purpose of gambling, including bookmaking. Florida Statutes §§ 849.01, 849.03, F.S.A. Moreover it is the public policy of the state as expressed in Florida Statute 849.26, F.S.A., that gambling contracts are void and of no effect save those expressly authorized by law. Legalized gambling in this state is a creature of the legislature and consistent with the state's desire to strictly regulate that activity, the legislature has prohibited bookmaking in an obvious attempt to free authorized pari-mutuel betting from the influences of those who would engage illegally in that business either on or off the track.

 The plaintiff, while conceding that untrustworthy individuals and those who would engage in bookmaking should be excluded from pari-mutuel establishments, asserts that the statute is additionally unconstitutional since, on the basis of one conviction for bookmaking, an individual may be permanently denied access to the state's pari-mutuel tracks.

Plaintiff contends, therefore, that the statute fails to recognize that one who has violated the law may thereafter reform and become a person of good character. In Hawker v. People of State of New York, 170 U.S. 189, 196, 197, 18 S. Ct. 573, 576, 42 L.Ed. 1002, the Supreme Court, in reviewing an Act of the New York legislature which prohibited a convicted felon from practicing medicine, stated:

Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the *legislature* has power in cases of this kind to make a rule of universal application, and no inquiry is permissible back of the rule to ascertain whether the fact of which the rule is made the absolute test does or does not exist. * * * In a certain sense such a rule is arbitrary but it is within the power of a *legislature* to prescribe a rule of general application based upon a state of things which is ordinarily evidence of the ultimate fact sought to be established. [Emphasis added.]

Additionally, the court recognized that:

When the legislature declares that whoever has violated the criminal laws of the state shall be deemed lacking in good moral character, it is not laying down an arbitrary or fanciful rule, one having no relation to the subject-matter, but is only appealing to a well-recognized fact of human experience; and, if it may make a violation of criminal law a test of bad character, what more conclusive evidence of the fact of such violation can there be than a conviction duly had in one of the courts of the state? The conviction is, as between the state and the defendant, an adjudication of the fact. *See also*, United States v. Brown (1965), 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed. 2d 484.

In the instant case the legislature has declared that those who have been convicted of bookmaking or who have been ejected from a race track in any state lack the moral character necessary for

admittance into a pari-mutuel establishment. The prior conviction is an adjudication of the fact of which the rule is made the absolute test. In any event it should be noted that Section 5 of the statute provides that an individual barred from the tracks or jai alai may be reinstated by the racing commission.

It is clear that the challenged statute bears a reasonable relationship to a legitimate state objective, that the classification established by the statute is neither arbitrary nor unreasonable, and therefore, that the statute does not violate the equal protection clause of the Fourteenth Amendment.

## BILL OF ATTAINDER

Plaintiff additionally asserts that the statute constitutes a bill of attainder expressly prohibited by the provisions of Article I, Section 10, of the Constitution of the United States.

 "A bill of attainder is a legislative Act which inflicts punishment without a judicial trial." Cummings v. State of Missouri, 4 Wall. 277, 323, 18 L.Ed. 356. "The bill of attainder clause was intended not as a narrow, technical prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." United States v. Brown, supra, 381 U.S. at 442, 85 S.Ct. at 1711–1712. Consequently by banning bills of attainder the framers of the Constitution sought to guard against such a hazard by limiting the legislature to its task of rule making, with the application of those rules being left to some other department of government. *Brown, supra* at 446, 85 S.Ct. at 1713. When a statute is challenged as a bill of attainder the central inquiry must be whether the disability imposed by the Act is "punishment" or whether it is regulation. *Brown, supra* at 462, 85 S. Ct. at 1722.

 In attempting to establish that the statute in issue is punitive rather than regulatory, plaintiff again assumes a difficult burden for only the clearest of proofs will suffice to establish unconstitutionality on such a basis. Flemming v. Nestor (1960), 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435. Considerations relevant to resolution of this issue are found in Kennedy v. Mendoza-Martinez (1963), 372 U.S. 144, 168, 169, 83 S.Ct. 554, 567, 9 L.Ed.2d 644:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operations will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry. * * *

Application of these criteria to Florida Statute 849.24, F.S.A. compels the conclusion that it is regulatory not punitive. The statute merely seeks to exclude from pari-mutuel establishments those individuals whose character, as evidenced by their prior conviction for bookmaking, is inconsistent with the lawful regulation of an activity which involves the morals and welfare of our state citizenry. Valdez v. State, *supra.* No doubt the consequences that may flow from application of this statute may be unpleasant to the plaintiff. However, "the question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation. * * *" *DeVeau, supra*, 363 U.S. at 160, 80 S.Ct. at 1155. Here it is obvious that this statute is but part of a statutory scheme designed to regulate gambling in the state and for the effectuation of that scheme it became important whether individuals had previously been convicted of bookmaking.

The object of the legislative concern is clearly the activity, bookmaking, and the status of the plaintiff, a person convicted of bookmaking, and thus the disqualification, while harsh and unpleasant, is not such punishment as is prohibited by the United States Constitution as a bill of attainder, Flemming v. Nestor, supra, 363 U.S. at 614, 80 S.Ct. at 1374, for the imposed disability seeks merely to accomplish a legitimate governmental purpose. Trop v. Dulles, (1958), 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630.

Accordingly, the court concludes and declares that Florida Statute 849.24(3), (4), (5), and (6) is valid and constitutional in all respects, and plaintiff's application for injunction to restrain the enforcement thereof is hereby denied.