PER CURIAM.
This appeal is from a judgment of the Circuit Court of Jefferson County, denying the injunctive relief prayed for by appellant, District Attorney John Paul DeCarlo.[1] We affirm.
*578 DeCarlo initiated this action on December 22, 1983, against Tomkat, Inc., which owns and operates a theater at 9221 Todd Drive in Birmingham. Several of the patrons of the theater had been arrested for lewd conduct in 1983, as a result of undercover work by members of the Birmingham Police Department. Appellant alleges that since this conduct constituted a nuisance pursuant to § 6-5-140, et seq., Code 1975 (commonly known as the Alabama Red Light Abatement Act), and no apparent termination to this behavior was foreseeable, an injunction should have been issued restraining Tomkat from maintaining the nuisance. See General Corp. v. State ex rel. Sweeton, 294 Ala. 657, 320 So.2d 668 (1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753. Also, he argues, the court should have issued a closing order and an order directing the seizure and sale of the property used in conducting the nuisance.
Tomkat, Inc., maintains that the acts of lewdness complained of were isolated instances which did not amount to acts of a continuing nature such as those constituting a nuisance. Moreover, Tomkat says it had taken affirmative steps toward eliminating these incidents from its theater.
. After a hearing, the trial court made the following findings of fact:
1. The Defendant [operates] a theater which shows sexually explicit movies at 9221 Todd Drive, Birmingham, Alabama.
2. During all twelve months of 1983, officers of the Birmingham Police Department, including various auxiliary officers, frequented the Defendant’s theater as a part of their official duties. No arrests were made during the first six months of 1983. During the last six months of 1983, twenty-eight individuals were arrested in twenty separate incidents. Two of the arrests were made in the parking lot outside of the theater and one of those arrests resulted from the police being advised of the individual’s conduct by an employee of the Defendant. There was one person arrested in July, two in September, three in October, seventeen in November and five in December.
3. Of the people arrested, one was just charged with disorderly conduct, nineteen were charged with indecent exposure and disorderly conduct, and the remainder were charged with various combinations of indecent exposure, disorderly conduct, public lewdness, indecent proposal, assault and battery, obstructing government operations and harassment, and resisting arrest.
4. Defendant’s employees co-operated with the police in the performance of their duties while at the theater. The co-operation included the employees allowing the police officers to use the projection booth as a vantage point from which to observe the theater patrons, and on some occasions, pointing out suspicious individuals to the police.
5. The theater was fairly well lighted, with more light inside the theater than is found in other theaters and was maintained in a clean and orderly manner.
6. According to the estimate of the police officers, 98% to 99% of the theater’s patrons did not break the law and merely watched the movies being shown. The police officers testified that they did not see the theater employees engage in any activities that would in any manner appear to encourage or condone the activities for which the various individuals were arrested.
7. In approximately the middle of December, 1983, the Defendant began playing a recorded announcement on the theater policy concerning behavior in the theater at the beginning of each double feature.... The arrests of individuals at the theater have diminished since the policy announcements began.

The acts and conduct of the persons arrested are, in and of themselves acts of lewdness within the definition and meaning of Section 6-5-140 et seq. However, the Court finds that the employees of the Defendant do not condone.such acts and that they take some affirmative steps to *579 prevent such conduct. The Court further finds that the number of persons engaged in such acts is small when considered as a percent of the total number of patrons of the Defendant.
Appellant alleges that the trial court erroneously interpreted the provisions of the Alabama Red Light Abatement Act. The court, in its order, specifically refers to the conduct as being “acts of lewdness.” According to appellant, once this determination was made, the Act mandates that the place be declared a nuisance. Appellant asserts that, in effect, the trial court declared the place a nuisance. Further, he argues that the court never found that the nuisance had been abated, only that the incidents were decreasing in number; the Act, he says, does not speak to whether the lewd conduct has diminished, but requires that the nuisance be abated entirely. It is for this reason, DeCarlo argues, that the trial court, based upon its findings of fact, was bound by the Act to issue the injunc-tive relief sought by the State.
We cannot agree with appellant’s construction of the language of the Act. Using appellant’s reasoning, any place where lewd conduct exists is a public nuisance and should, therefore, be closed, unless the nuisance is abated. This could result in the closing of shopping malls, theaters, hotels, or even the courthouse wherein this case was decided, as in all of these places arrests have been made of persons engaging in lewd conduct. This is obviously not the result the legislature intended when it enacted the Alabama Red Light Abatement Act.
In arguing that all that is necessary for a nuisance to be declared is for lewd conduct to exist in a place, appellant cites Flamingo Club of Dothan v. State ex rel. Sorrells, 387 So.2d 132 (Ala.1980), and Ellwest Stereo Theaters v. State ex rel. Parsons, 371 So.2d 1 (Ala.1979), for support. In both of those cases, however, the management of the establishments either actively promoted or condoned the activities, and the employees participated and even encouraged the patrons to engage in the lewd conduct. In the case sub judice, the evidence reveals that Tomkat has done all in its power to eliminate the conduct. It has cooperated fully with police efforts to control the acts and has taken independent action by playing a tape-recorded warning in an attempt to discourage lewd conduct on the part of its patrons.
In Tarbox v. Board of Supervisors, 163 Cal.App.2d 373, 329 P.2d 553 (1958), a case with strikingly similar facts, the California Court of Appeal addressed this same issue, stating:
The business of operating a motion picture theater is a lawful one of beneficial character and not inherently dangerous to the public and while it may be subject to reasonable regulation it may not be prohibited. [Citations omitted.] It is not asserted nor would the evidence sustain such an assertion that petitioner conducted his business in any other manner than [that in which] motion picture theaters are ordinarily conducted. It is not asserted that he countenanced, consented to or in any wise permitted any lewd or immoral acts upon the premises. It cannot be said, therefore, that the business conducted by him constituted a public nuisance although it may be that the acts of those who gained lawful entrance to the theater might be detrimental to those of the public who observed them or who were molested by these unfortunate deviates. It is their acts which were seemingly beyond the control of either the police or petitioner which were detrimental to the public interests, not the operation of a motion picture theater. The fact that a motion picture theater, being a darkened place, provides opportunity for these persons to assert their unnatural proclivities is true of every theater, motion picture or legitimate, or of any other place to which the public is admitted and which through the nature of the business transacted therein is darkened; and if, because the condition permits "of the performance of some lewd act, this makes the place a public nuisance then all such places *580 are public nuisances. To so hold would be absurd. [Emphasis added.]
163 Cal.App.2d at 377, 329 P.2d at 556.
As was pointed out in Tarbox, the very nature of a movie theater affords those so inclined an opportunity to “assert their unnatural proclivities.” Tomkat has even taken steps to eliminate what naturally may occur in any theater. The trial court correctly found that after the tape-recorded message was instituted, arrests of patrons diminished. In fact, these incidents may have stopped altogether, as appellant offered no evidence that any arrests had been made for lewd conduct on or about the date of the hearing.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
FAULKNER, ALMON, EMBRY, BEAT-TY and ADAMS, JJ., concur.

. The Court notes that while this appeal was pending, District Attorney DeCarlo’s term expired and he was succeeded by David Barber. See Rule 43(b), A.R.A.P.