[1] The Court notes that while this appeal was pending, District Attorney DeCarlo's term expired and he was succeeded by David Barber. See Rule 43 (b), A.R.A.P.
These two cases arise under the Alabama Red Light Abatement Act, Code 1975, § 6-5-140, et seq. After finding that defendants permitted and effectively encouraged their patrons' lewd conduct in their adult motion picture theaters, the trial court granted permanent injunctions prohibiting defendants from operating their premises as motion picture theaters or exhibiting motion pictures, but permitting them to operate any other lawful business. The defendants argue that this injunction constitutes an impermissible prior restraint of their right to free expression protected by the First Amendment to the United States Constitution.
College Art Theatres, Inc., exhibits sexually explicit motion pictures at its theater in Birmingham. In the year prior to July 11, 1983, when the trial court entered a preliminary injunction in this matter, Birmingham police officers witnessed 39 incidents of sexual misconduct in College Art's theater. The trial court made the following findings regarding these incidents and the management's attitude toward them:
 "There has been shown to be a sign in the lobby of the theater since January or February 1983 warning,
 `This theater will not tolerate any disorderly conduct!!!
 `You can and will be arrested for any improper actions, as our theater is patrolled at all hours!!'
 "The posted sign in the lobby appears to be for the purpose of appearances only, except perhaps as a warning that persons engaging in sexual misconduct may be arrested by police officers. The evidence shows that, except for an occasional walk by the manager or operator through the theater during the various employee shifts, the only patrolling of the theater is done by police officers during their surveillance or investigation of the Defendant's premises. One of the operators of the Defendant testified that he had asked several people to leave the theater because they were `moving around.' This testimony was uncorroborated. No instance has been evidenced that any of the Defendant's employees have caused persons guilty of misconduct to be arrested.
 "Notwithstanding the manager's not believable testimony that he never knew of the wrongful conduct shown until he heard of it in court, he acknowledged that he knew of the arrests that were made on the premises. Again, not believable, *Page 42 
the manager disclaimed knowledge of what the arrests were for, but did acknowledge that he had never inquired or sought such information. The operator also knew of the arrests on his shift and assumed that they were for propositioning the officers.
 "The Alabama Red Light Abatement Act grants to the District Attorney the authority to file this action to abate a nuisance and to enjoin perpetually the persons maintaining such nuisance. § 6-5-142, Code of Alabama, 1975.
"An abatable nuisance under this act is defined as:
 `Any place in or upon which lewdness, assignation or prostitution is conducted, permitted or continued or exists and the personal property and contents used in conducting or maintaining any such place for any such purpose.' § 6-5-140 (3), Code.
 "The acts shown of masturbation, indecent exposure and fellatio unquestionably constitute lewdness within the meaning of the act and have been shown to have been not only conducted on the Defendant's premises, but also have been permitted to occur and continue. The inaction and indifferent attitude of the Defendant and its employees constitute a condoning of these activities and even an encouragement of them. There is no question in the Court's mind that the public signal or message emanating from the defendant's place of business is that to those persons so inclined, the Defendant's premises is generally a safe place for sexual misconduct without interference by the management.
 "The Court totally rejects the arguments of the Defendant that incidents of the nature shown occur only when police officers are present. It is more believable to assume that if the number of incidents shown occur when police officers are present, the actual incidents occurring on the Defendant's premises must number in the hundreds or even the thousands.
 "The Court is of the opinion and so finds that the Defendant, under the circumstances shown, must and is due to bear the responsibility for the gross acts of lewdness occurring in its theater."
Anwar Enterprises, Inc., operates a bookstore selling erotic materials. In the rear of Anwar's place of business are "movie rooms" with coin-operated projectors showing sexually explicit movies. There are ten of these rooms or booths along a hallway leading from the book and magazine portion of the store.
 "Each booth has a door that is designed to lock from the inside. Each booth has a seat or bench wide enough to accommodate two persons, a coin operated movie projector and a movie screen placed on the front portion of the booth. At various times within the past year most, if not all, of the booths prior to June 8, 1983 (this action was filed June 13, 1983) had holes of various sizes ranging from eight to fifteen inches square in the walls or partitions between the booths. Some of these holes appear to have been crudely cut out and others appear to have been deliberately cut with a saw. At the time this action was filed all of the holes had been covered by the operators of the premises with plywood. Some of the locks on the booth doors operate and others do not.
 "The area of the premises where the movie booths are located is lighted with `black' or fluorescent lights emitting only enough light to see persons within the hallway but generally described as `very dark.' At the time this action was filed the lighting had been increased or turned up to the point that the lighting in the area has been described as `very light.'
". . . .
 "During the twelve months prior to the time this action was filed, twenty-nine incidents of sexual misconduct involving thirty-two persons have been specifically evidenced by police officers and auxiliary officers of the Birmingham Police Department vice squad as having occurred in the movie portion of the Defendant's premises. In all incidents shown the officers *Page 43 
were working in plain clothes and arrests were made as a result of the particular incidents.
 "Except in one instance, all of the incidents were of a male homosexual nature, the excepted incident being a solicitation for prostitution directed to a female undercover police officer. The homosexual incidents involved customers publicly exposing their private parts and masturbating in the presence of any other person who, at the particular time, happened to be standing in the hallway of the movie portion of the premises or occupying one of the movie booths. Most of the incidents involved customers intentionally exposing themselves or masturbating in view of others by leaving the movie booth door open to view from the hallway or placing their private parts next to one of the large holes in the walls in one of the booths. Some of the incidents involved customers in adjacent booths performing acts of fellatio using the cut out hole in the walls of the booths. In other instances a customer would be shown to have entered a booth occupied by another person and then expose himself or masturbate in the presence of such person for the apparent purpose of attempting to engage that person in a homosexual act.
 "It was testified by several officers that the incidents that they witnessed, testified to and made arrests for, were representative of a much greater number of arrests that they had made inside of Defendant's premises. The evidence indicates that approximately two hundred such arrests were made during the prior twelve month period.
 "The evidence further shows that during the past year the Defendant's employee or operator was stationed in the bookstore portion of the premises collecting the admission charge and entertaining themselves by watching television. Within the past fourteen days prior to this hearing, the Defendant has stationed an employee in the hallway portion of the movie theater for the purpose of making change. It has also been suggested by argument, but not proven, that the Defendant's employees had, during the past year, patrolled the hallway of the movie area for the apparent purpose of deterring or inhibiting sexual misconduct by their presence or interrupting the sexual acts of customers by voiced objection. There has been no evidence of such supervision by the Defendant, even assuming that such would have been adequate. There further has been no single occasion evidenced where the Defendant's employee or operator has called the police or made a complaint involving a sexual offense occurring on the Defendant's premises.
". . . .
 ". . . [T]he Defendant, through its employees and operators, has exhibited and maintained a passive, indifferent and permissive attitude in respect to such conduct. This attitude has had the effect, in the Court's opinion, of encouraging the conduct shown by providing a refuge and place for the meeting of persons inclined or desiring such sexual contacts or conduct.
". . . .
 "The Defendant cannot escape or find refuge behind `First Amendment' privileges when the conduct shown here has and is permitted to take place and continue by the Defendant.
 ". . . [T]he Court finds and concludes that such portion of the Defendant's premises has been and is being maintained as a nuisance and the nuisance [is] due to be abated by the closing of the movie theater area."
The court enjoined both defendants from conducting a movie theater or exhibiting motion pictures. It ordered Anwar Enterprises to bar access by the public to the portion of its premises where the movie booths are located, and ordered the sheriff to sell the personal property inventoried under the provisions of § 6-5-151 (a). The court specifically allowed both defendants to conduct any business not enjoined by the judgment. *Page 44 
The state, under its police power, has the authority to abate nuisances offensive to the public health, welfare, and morals. A business which allows lewd conduct on its premises may constitute such a nuisance. Flamingo Club of Dothan, Inc.,387 So.2d 132 (Ala. 1980); Ellwest Stereo Theatres, Inc. v. Stateex rel. Parsons, 371 So.2d 1 (Ala. 1979); General Corporationv. State ex rel. Sweeton, 294 Ala. 657, 320 So.2d 668, cert. denied, 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1975). The state has greater power to regulate nonverbal conduct than descriptions or depictions of the same behavior. Miller v.California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973);California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342
(1972); United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673,20 L.Ed.2d 672 (1968).
We agree with the trial court that these injunctions of the nuisances maintained by defendants do not infringe upon the defendants' First Amendment rights of freedom of expression. This is not a case of prior restraint of exhibition of allegedly obscene materials. It matters not what movies were showing at defendants' premises. What matters is that defendants used their operation of motion picture theaters as a reason to draw customers who then used the premises as a haven for illegal sexual activity. Defendants might as well have operated a brothel.
Because operation of a movie theater necessarily entails providing a darkened place where people gather, the trial court's injunction is a permissible means by which to abate the nuisance. The defendants have demonstrated their indifference to the indecent and illegal conduct of the patrons of their darkened hallway and theater to the extent that such conduct became an integral part of the amenities for which patrons were paying an admission charge. The enjoining of such business is well within the purpose of the Red Light Abatement Act.
The trial court properly distinguished these cases from its decisions which we have affirmed in State ex rel. DeCarlo v.Tomkat, Inc., 469 So.2d 577 (Ala. 1985) and State ex rel.DeCarlo v. Pleasure Books East, Inc., [Ms. June 28, 1985] (Ala. 1985). In those cases, the trial court made sustainable findings that the defendants had made bona fide efforts to prevent lewd conduct on their premises and that any such conduct was not extensive nor necessarily related to the defendants' manner of conducting their businesses. In these cases, the defendants have not even designated the transcripts of the trials as part of the record on appeal, choosing instead to accept the trial court's findings for the sake of their arguments that the trial court's injunctions violate their First Amendment rights as a matter of law.
The judgments of the trial court are affirmed.
AFFIRMED.
FAULKNER, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.