579 P.2d 580

**Keith NATION, Appellant,**

v.

**APACHE GREYHOUND PARK, INC., an Arizona Corporation, Black Canyon Greyhound Park, Inc., an Arizona Corporation, American Greyhound Racing, Inc., an Arizona Corporation, and Western Racing, Inc., an Arizona Corporation, Appellees.**

**No. 1 CA–CIV 3498.**

Court of Appeals of Arizona,
Division 1,
Department B.

March 14, 1978.

Rehearing Denied April 19, 1978.

Review Denied May 31, 1978.

Philip M. Haggerty, Phoenix, for appellant.

Lewis & Roca by John P. Frank, Brian Goodwin, James B. Long, Phoenix, for appellees.

OPINION

JACOBSON, Judge.

The sole issue on appeal is whether Arizona racetracks may exclude a patron without cause where no statutory or civil rights claim is involved.

The facts of this case are not in dispute. The appellant, Keith Nation, has been barred from entry into any greyhound racing track in the State of Arizona for the purpose of wagering. Mr. Nation initiated an action against the Arizona Racing Commission and appellees, corporate holders of permits to conduct greyhound racing in Arizona. The complaint states two causes of action against the corporate defendants— one for defamation and the other for unlawful exclusion from their business opera-

tions. The trial court granted the corporate defendants' motion to dismiss the cause of action for unlawful exclusion, and issued a formal written judgment pursuant to Rule 54(b), Arizona Rules of Civil Procedure. This is an appeal from that judgment. The State of Arizona is not a party to this appeal.

Appellant alleges no violations of federal or Arizona civil rights statutes. Rather, he argues that: (1) where a state grants a monopoly over a particular activity, the public cannot be barred without cause and (2) the authority given to the Arizona Racing Commission under A.R.S. § 5–101, *et seq.* is exclusive and preempts individual permit holders from expelling patrons. We disagree.

Appellees do not contest the allegation that there is a monopoly over greyhound racing in Arizona,[1] but rely on the well-established common law principle that operators of most businesses, including places of amusement such as racetracks have the right to refuse admission to anyone, without having to show cause therefor. *See, e. g., Presti v. New York Racing Association, Inc.,* 46 A.D.2d 387, 363 N.Y.S.2d 24 (1975). *Garifine v. Monmouth Park Jockey Club,* 29 N.J. 47, 148 A.2d 1 (1959); *Greenfeld v. Maryland Jockey Club,* 190 Md. 96, 57 A.2d 335 (1948); *Madden v. Queens County Jockey Club, Inc.,* 296 N.Y. 249, 72 N.E.2d 697 (1947), cert. denied 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 346 (1947).

Appellant urges us to abandon this common law right of exclusion because appellees have a "state monopoly." This argument has been considered and rejected by other courts, including the New York Court of Appeals in *Madden, supra.* The *Madden* court ruled that a license to conduct pari-mutuel betting did not make the licensee an administrative agent of the state and that a license to conduct racing meetings was not a franchise to perform a public purpose. *See also, Garifine, supra; Greenfeld, supra.*

Appellant cites *Orloff v. Los Angeles Turf Club, Inc.,* 36 Cal.2d 734, 227 P.2d 449 (1951) in support of his position that the common law rule of exclusion should be abandoned. However, the *Orloff* decision involved the construction of a California statute, making it unlawful for the operator of a racetrack "to refuse admittance to any person over the age of twenty-one years." Although the *Orloff* court stated that the statute was not the sole basis for its decision, any inference that *Orloff* stands for the proposition that there is a common law or constitutional right to attend a California racetrack was foreclosed by the court's later holding in *Flores v. Los Angeles Turf Club,* 55 Cal.2d 736, 13 Cal. Rptr. 201, 361 P.2d 921 (1961). In *Flores,* the court said:

"It is true that this court in *Orloff* stated: 'The so-called civil rights statutes, sections 51–54 Civil Code, do not necessarily grant theretofore non-existent rights or freedoms. The enactments are declaratory of existing equal rights and provide the means for their preservation by placing restrictions upon the power of proprietors to deny the exercise of the right and by providing penalties for violation.' 36 Cal.2d at page 739, 227 P.2d at page 453. However, it is clear from the discussion which ensued that the court was referring to a declaration of pre-existing statutory, rather than constitutional or common law, rights to equal access. To the extent that the foregoing statement implied more than that, it would have been dictum." Id. at 741, 13 Cal.Rptr. at 204, 361 P.2d at 924.

Appellant's second argument is that the common law right of exclusion has been changed in Arizona because the Arizona Racing Commission is authorized by statute to regulate attendance at racing meetings.[2]

---

1. This was technically true, at least at the time plaintiff's complaint was filed.

2. This authority is implied in: A.R.S. § 5–104(A) which provides in part that the commission shall " . . . regulate and supervise all racing meetings held in the state . . . ."; A.R.S. § 5–104(B) which empowers the commission to promulgate rules and regulations to govern racing meetings " . . . to protect and promote public health, safety and the proper conduct of racing . . . "; A.R.S. § 5–

In this regard, appellant cites the case of *Burrillville Racing Assoc. v. Garabedian,* 113 R.I. 134, 318 A.2d 469 (1974) which held that a Rhode Island statute providing that a racetrack licensee "shall have the right to refuse admission to . . . any person or persons . . . whose presence . . is, in the sole judgment of said licensee . . . undesirable . . ."[3] changed the common law rule and required that a determination must be made as to whether in fact the person to be ejected is an undesirable. We refuse to follow this decision for the reason it is simply wrong. The Rhode Island statute provides that the determination as to who is undesirable is in "the sole judgment of said licensee." If the licensee determines, in its sole judgment, that a person is undesirable, there is no need to proceed further. This, of course, is the common law rule and Rhode Island's statute is merely a codification of it. Moreover, even if the Arizona Racing Commission has been granted exclusive authority over entrance to racetracks, which we do not decide, it has delegated this authority to the holders of racing permits under its rulemaking authority. Rules promulgated by the Commission state in pertinent part:

> "13. The Permittee shall furnish an adequate police force whose duty it shall be to maintain order and exclude from the grounds all handbooks, touts, operators of gambling devices, or others whose conduct is objectionable to the public or contrary to the best interest of racing, including all persons ruled off by the stewards." Arizona Code of Rules and Regulations, R. 4–27–03.

We are not persuaded that the common law rule of exclusion should be changed. The policy upon which it is based is still convincing. The race track proprietor must be able to control admission to its facilities without risk of a lawsuit and the necessity of proving that every person excluded would actually engage in some unlawful activity.

106(F) which authorizes commission appointees to assist in "keeping the peace at all race meetings . . . ."

For the reasons stated above, we find that the trial court properly dismissed appellant's claim of unlawful exclusion from appellees' business operations.

Judgment affirmed.

EUBANK, P. J., and OGG, J., concurring.