JOHN MARZOCCA, PLAINTIFF-RESPONDENT, v. FRANK FERONE AND FREEHOLD RACING ASSOCIATION, DEFENDANTS-APPELLANTS, AND NEW JERSEY RACING COMMISSION, DEFENDANT-RESPONDENT.

Argued April 18, 1983—Decided July 12, 1983.

510

*Robert S. Raymar* argued the cause for appellants (*Hellring, Lindeman, Goldstein & Siegal,* attorneys; *Robert S. Raymar* and *Bernard Hellring,* of counsel).

*Donald M. Lomurro* argued the cause for respondent John Marzocca (*Lomurro, Eastman & Collins,* attorneys).

*Fredric M. Knapp,* Deputy Attorney General, argued the cause for respondent New Jersey Racing Commission (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

In *Garifine v. Monmouth Park Jockey Club,* 29 *N.J.* 47 (1959), this Court held that a private racetrack was entitled, under common law, to exclude a patron for any reason other than race, creed, color, national origin or ancestry. We now consider that common law right in the context of the exclusion of a race horse. In addition, the appeal presents a jurisdictional issue: whether disputes between licensees of the New Jersey Racing Commission (Commission) involving matters not regulated by the Commission should be heard in an administrative or a judicial forum.

After both the Chancery Division and the Commission had dismissed plaintiff's claims on jurisdictional grounds, the Appellate Division ruled that the Chancery Division was the proper forum. *Marzocca v. Ferrone,* 186 *N.J.Super.* 483, 496 (1982). In addressing the merits, the Appellate Division held that in light of *Uston v. Resorts Int'l Hotel, Inc.,* 89 *N.J.* 163 (1982), the racetrack no longer enjoyed an unfettered right to exclude. It remanded the matter to the trial court for consideration of the reasonableness of the exclusion. 186 *N.J.Super.* at 495.

We affirm the Appellate Division on the jurisdictional issue and reverse on the merits. Because *Uston* is distinguishable on the facts, we need not address the assertion that *Uston* overruled *Garifine sub silentio,* 186 *N.J.Super.* at 490 n. 3.

I

In April and May, 1981, Lord John C, a standardbred race horse, won three consecutive races at Freehold Raceway, which is operated by defendant Freehold Racing Association. Encouraged by this success, Lord John C's owner, plaintiff, John Marzocca, decided to ship his horse to Yonkers Raceway in New York, with the hope of winning larger purses. Walter Mazur, Lord John C's trainer, informed defendant Frank Ferone, Racing Secretary at Freehold, of his intention to remove the horse from the grounds. Ferone requested that the move be postponed for a short time in order to reduce the effect of Lord John C's withdrawal on the scheduling of races. Ferone explained that the removal of Lord John C would threaten the interests of other horse owners and the track because it would aggravate the shortage of horses available for races in Lord John C's class ($15,000 claiming) and might lead to the running of "short fields" or the cancellation of races. Mazur refused to comply with Ferone's request. Ferone then informed Mazur that if he removed the horse at that time, Lord John C would be barred permanently from Freehold Raceway.

Notwithstanding that warning, plaintiff moved Lord John C to Yonkers Raceway. When plaintiff attempted to return the horse to Freehold, Ferone refused to accept the eligibility papers or the entry of Lord John C. The track did not take similar action, however, with regard to plaintiff's other horses: Olympic Charley, also owned by plaintiff, competed at Freehold subsequent to the exclusion of Lord John C.

Plaintiff responded to the exclusion of his horse by instituting suit in the Chancery Division against Ferone, Freehold, and the Commission. He claimed that the exclusion violated the rules of

the Commission, constituted an unconstitutional restriction on interstate commerce, and violated his due process rights. The trial court dismissed that action without prejudice on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Plaintiff next unsuccessfully sought a hearing before the Commission, which took the position that the dispute was a private matter that did not constitute a case or controversy within its jurisdiction because "the composition of the racing card is left entirely to the discretion of the permit holder."

Plaintiff appealed both determinations. The Appellate Division reversed the Chancery Division and affirmed the Commission. 186 *N.J.Super.* at 496. The court below was influenced by this Court's decision in *Uston,* reading our opinion to require that after *Uston* the racetrack's common law right to exclude persons using the track be balanced against the right of reasonable access to facilities otherwise held open to the public. Holding that both interests deserved judicial protection, the Appellate Division remanded the matter for the balancing of those rights upon a more detailed record. The court below rejected plaintiff's other claims and dismissed the Commission from the proceeding on remand. In addition, it affirmed the Commission's rejection of jurisdiction on the ground that the matter involved the competing common law rights of the parties and not any regulations promulgated by the Commission.

Freehold and Ferone petitioned this Court to review all aspects of the Appellate Division's ruling except the dismissal as to the Commission. Plaintiff cross-petitioned, challenging the determination that his due process and equal protection rights had not been violated inasmuch as there was no state action. We granted the petition and denied the cross-petition, 91 *N.J.* 574 (1982).

## II

Before reaching the application to the facts of this case of the common law right of exclusion, we address the jurisdictional

question. It is essential that parties confronted with the dilemma of deciding whether to seek review in an appropriate administrative or judicial forum be guided by intelligible standards. This case presents a prototype: plaintiff brought claims before the Chancery Division and subsequently before the Racing Commission, and was denied relief in both forums on jurisdictional grounds. That situation created unnecessary expense and confusion for both the parties and the tribunals.

█ The Appellate Division correctly resolved that issue by characterizing the dispute as "one solely involving the opposing common law rights of a racehorse owner and a racetrack proprietor." 186 *N.J.Super.* at 496. Once this characterization is made, it is clear that plaintiff must seek his remedy in the courts. This is so because the Commission does not have jurisdiction over all matters arising on the racetrack or in a racing context. In addition, although the Commission may have the authority to regulate certain business decisions of licensed racetracks, it has not chosen to establish regulations relevant to this case. In denying entry to Lord John C, Freehold, through the actions of Ferone, acted in a private fashion, not under state authority not pursuant to or in derogation of the Commission's regulations. The Commission simply is not involved in the dispute.

Confusion on the jurisdiction issue may stem from the decision in *Bishop v. New Jersey Sports & Exhibition Auth.,* 168 *N.J.Super.* 533 (App.Div.1974). In *Bishop* plaintiff challenged his ejection from Meadowlands Racetrack, pursuant to regulation, for his conviction based on a Maryland race-fixing scheme. *Id.* at 535. *N.J.A.C.* 13:70–1.17 imposed a duty on racing associations to eject persons guilty of conduct detrimental to racing or to the public welfare. The court held that the ejectment was proper, and in discussing the procedural anomalies of the case also held that "Racing Commission actions are * * * reviewable not in either of the trial divisions but in the Appellate Division of the Superior Court." *Id.* at 538.

The *Bishop* holding does not apply to this dispute for two reasons. First, Bishop sought review, as opposed to original adjudication, in the trial court. The Appellate Division in *Bishop* did not address the availability of initial adjudication in the trial court. Second, Bishop challenged an action based entirely on a duty imposed by the Commission; no such duty exists in this case. In *Bishop* the matter was properly before the Commission for initial review because of the regulation; in this case, in the absence of such a regulation, any available remedies must be found in the courts.

■ In summary, aggrieved parties should seek redress before the Commission for alleged wrongs resulting from actions of Commission personnel or from actions taken in accordance with the rules and regulations of the Commission. Private disputes, not involving Commission personnel or regulation, should be resolved by the courts.

### III

Because defendants' actions in excluding Lord John C were private in nature, we review them under the standards of the common law right of exclusion. The Appellate Division correctly followed this approach but ruled that Freehold did not have an absolute right under existing law. We disagree with that holding in the factual context of this case.

The common law right of exclusion, as applied to racetracks, became a part of the law of this jurisdiction in *Garifine v. Monmouth Park Jockey Club*, 29 *N.J.* 47 (1959). Under that doctrine, Monmouth Park, a private racetrack, legally excluded a patron, since that exclusion was not based on race, creed, color, national origin or ancestry. In *Martin v. Monmouth Park Jockey Club*, 145 *F.Supp.* 439 (D.N.J.1956), aff'd, 242 *F.2d* 344 (3d Cir.1957), the federal court applied the same rule to resolve a conflict involving a jockey who was refused the right to ride at the racetrack, notwithstanding his licensure by the Commission. Thus, the doctrine has been applied to both patrons and those who have a business relationship with the racetracks.

In *Uston v. Resorts Int'l Hotel, Inc., supra,* a casino patron challenged the casino's private right to exclude him from the premises. We held that the Casino Control Commission, not the licensee, had the authority to determine whether "card counters" could be excluded from the casino's gaming tables. 89 *N.J.* at 167. In addition, we noted, in *dicta,* that the common law right of an amusement owner to exclude unwanted patrons was not absolute in light of the competing interest of the patron in reasonable access to the premises once the property owner has opened them for public use. *Id.* at 170–74.

■ Notwithstanding the *dicta* in *Uston,* we must part company with the court below on the issue of Freehold's right to exclude. Without commenting on the status of the law in the amusement owner/patron context, we hold that the racetrack's common law right to exclude exists in the context of this case, *i.e.,* where "the relationship [is] between the track management and persons who wish to perform their vocational activities on the track premises." *Martin, supra,* 145 *F.Supp.* at 441.

A close examination of the language in *Uston* that concerns the common law right to exclude makes clear that that decision was not intended to reach beyond concerns for the general public. Not only was the plaintiff in *Uston* a member of the general public, but this Court, in commenting on the common law right, discussed only cases that involved the rights of the public. For example, we considered our earlier decision in *State v. Schmid,* 84 *N.J.* 535 (1980), which involved a conflict between a person's First Amendment rights and a university's interest in its private property. In *Schmid* we stated that "the more private property is devoted to public use, the more it must accommodate the rights which inhere in individual members of the general public who use that property." *Id.* at 562. In addition, we incorporated discussion of the "public calling" doctrine, which historically has required certain businesses to accept patrons without discrimination. See *Uston,* 89 *N.J.* at 173.

In this case, plaintiff is not a patron of Freehold Raceway in the same way that Uston was a patron of the casino. The casino

held itself open to all members of the public who wished to gamble at its tables. Similarly, Freehold Raceway opens its doors to those who wish to wager on standardbreds. However, plaintiff seeks to race his horses at the track, not merely attend the races as an ordinary patron. The Appellate Division apparently perceived this distinction, but attached no legal significance to it. The court read into our opinion in *Uston* the conclusion that the distinction was unimportant by quoting that decision, adding its own bracketed material to the *Uston* discussion, as follows: " '[p]roperty owners have no legitimate interest in unreasonably excluding particular members of the public [*and, inferentially, those otherwise entitled to use the public facilities*] when they open their premises for public use.' *Id.* 89 *N.J.* at 173." 186 *N.J.Super.* at 491 (emphasis added). We do not draw the inference suggested by the court below. In the absence of a legitimate regulation governing the subject matter, such an inference could create an unwarranted interference with the business relationships of a private racetrack and those people who wish to perform their vocational activities on racetrack property.

While we therefore disagree with the Appellate Division's expansive interpretation of *Uston,* we agree that the Chancery Division had jurisdiction to entertain a complaint to test the action of the raceway. In *Garifine, supra,* we held that a private racetrack could legally exclude a patron if the exclusion was not based on race, creed, color, national origin or ancestry. We now limit the common law doctrine by proscribing exclusions that violate public policy. In so doing, we point to our precedent in the area of employment at will: although a contract of employment is terminable at the discretion of the employer, that action is subject to challenge when the termination is for reasons that contravene public policy. *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58 (1980).

Even under this broader standard, we are constrained on the record before us to believe that the Chancery Division

correctly dismissed the complaint for failure to state a claim. At oral argument before us, the plaintiff expressly declined to base his argument upon an express or implied contract between the horseman and the raceway. Thus, the only claim that could be made would be that the exclusion of Lord John C contravened public policy of the State of New Jersey. We find nothing in the pleadings or in the moving papers before the trial judge that would have fairly projected such an issue. Plaintiff did not assert that the action was based upon ulterior motives to prefer other horsemen or to further monopolistic practices.

There being no meritorious issues raised by plaintiff before the Chancery Division, that court's dismissal of the complaint was correct.

The judgment of the Appellate Division is affirmed in part and reversed in part. The cause is remanded to the Chancery Division for entry of judgment for defendants. No costs.

*For affirmance in part and reversal in part*—Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.