482 A.2d 147

**Philip P. SILBERT**

v.

**William L. RAMSEY et al.**

**No. 141 Sept. Term, 1983.**

Court of Appeals of Maryland.

Oct. 9, 1984.

Joseph F. Murphy, Jr., Towson (Lynne Brueck and White & Murphy, Towson, on brief), for appellant.

Steven J. Parrott, Towson (William F.C. Marlow, Jr. and Marlow & Peddicord, Towson, on brief), for appellees.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (Retired), Specially Assigned.

COUCH, Judge.

Philip P. Silbert, appellant in the instant appeal, has been excluded from the Timonium Racetrack and is prohibited from attending race meetings there under the threat of his arrest for trespassing. In objection to his exclusion, appellant raises issues of common law and constitutional rights. Specifically, he questions whether the owner of the track has the common law right to exclude him arbitrarily, and whether he has a common law right of access. Furthermore, he contends that his constitutional rights of due process and equal protection were violated by such exclusion. We hold that appellant's contentions are without merit.

The facts of this case are not in dispute. Timonium Racetrack, which sponsors horse racing meets sanctioned by the Maryland Racing Commission, is owned and operated by the Maryland State Fair and Agricultural Society, Inc., appellee, which is a private organization. Security at the racetrack is provided by the Thoroughbred Racing Protec-

---

* DAVIDSON, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

tive Bureau (hereinafter "TRPB"). TRPB is a private, nationwide investigative agency engaged by various racetrack operators to provide track security. William L. Ramsey, appellee, was in charge of the TRPB activities in Maryland at the time the instant action began. The appellant, Silbert, has a criminal record. In 1969, he was convicted of conspiring to, and of violating the Maryland lottery laws. *See Silbert v. State*, 12 Md.App. 516, 280 A.2d 55, *cert. denied*, 263 Md. 720 (1971) (affirming appellant's conviction). He was incarcerated from March 17, 1972 until paroled on June 5, 1975; he will remain on parole until sometime in 1984.

According to Ramsey, TRPB, pursuant to guidelines established in 1956 by the Thoroughbred Racing Association, an organization connected with TRPB, set up a policy of excluding persons from racetracks who had a history of involvement with illegal gambling activities or organized crime, or who had been convicted of other serious crimes. The purpose of this policy was to protect the integrity of the legal gambling activity conducted at Maryland tracks. Ramsey had the responsibility to determine who was undesirable and should be excluded, subject, however, to the track owner's review. He admitted that there had been occasions when the owner disagreed with him, and other instances when he himself did not exclude certain persons similarly situated to the appellant, apparently because they were "informers." Because of his past conviction, appellant was advised by Ramsey and the TRPB on several occasions not to return to any of the Maryland thoroughbred racetracks and told that he would be arrested for trespassing if he attempted to enter the Timonium Racetrack as a spectator.

Appellant desired to attend race meetings at Timonium and believed his exclusion was unlawful; consequently, he filed a Bill of Complaint seeking an injunction restraining the owner and its agents from arresting or ejecting him from those portions of the track open to the general public unless appellees obtained a court order permitting such

action. The Circuit Court for Baltimore County denied appellant's requested relief and this appeal followed. We granted certiorari prior to consideration by the Court of Special Appeals in order to consider questions of public importance.

## I

■ The issue in the instant appeal is whether a person who has been convicted of violating the lottery laws can be barred from attending horse races at a racetrack operating under license of the Maryland Racing Commission. In *Greenfeld v. Maryland Jockey Club*, 190 Md. 96, 57 A.2d 335 (1948), this Court held that the operator of a racetrack can, without reason or sufficient excuse, exclude a person from attending its races so long as the exclusion does not violate an individual's civil rights. *Id.* at 102, 106, 57 A.2d at 337, 339. The racetrack operator " 'has the power to admit as spectators only those whom he may select, and to exclude others solely of his own volition, as long as the exclusion is not founded on race, creed, color or national origin.' " *Id.* at 102, 57 A.2d at 337 (quoting *Madden v. Queens County Jockey Club*, 296 N.Y. 249, 72 N.E.2d 697, 698, *cert. denied*, 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 346 (1947)). In addition, in *Greenfield* the Court held that the plaintiff did not have a right to be admitted to race meetings. *Id.* [190 Md. 96] at 106, 57 A.2d at 339.

Appellant nevertheless contends that the decision in *Greenfeld* is not controlling. Appellant contends that the common law principle of the right of reasonable access to public places was well established before *Greenfeld* was decided. The right to exclude must be balanced against the common law right of reasonable access to places of public accommodation and, appellant maintains, the Court failed to recognize this in *Greenfeld*. Appellant attempts tracing a right of reasonable access through civil rights legislation and cases. He contends that the Maryland Public Accommodations Law, Maryland Code (1957, 1979 Repl.Vol., 1983

Cum.Supp.), Article 49B, § 5[1] (counterpart of 42 U.S.C. § 2000a (1982)) finally established the right of reasonable access to places of public accommodation. Appellant suggests further that the Public Accommodations Law abrogated the common law right to exclude; consequently, the right to exclude must be balanced against the right of access to the extent that exclusions cannot be arbitrary or unreasonable.

Appellant's contentions are without merit. Appellant's view of a common law history of a right of access is without precedent. The common law right to exclude can be traced from English common law. In the case of *Wood v. Leadbitter*, 13 M & W 838, 153 Eng.Rep. 351 (Ex.1845), the court recognized that one who purchases a ticket for admission to a racetrack may nevertheless be denied access to the property since only a license is obtained and, when the license is not coupled with an interest in the property, it may be revoked. In *Marrone v. Washington Jockey Club*, 227 U.S. 633, 33 S.Ct. 401, 402, 57 L.Ed. 679 (1913), the United States Supreme Court followed the commonly accepted rule of *Leadbitter.* Despite the apparent rejection of *Leadbitter* in

---

1. The Maryland Public Accommodations Law provides in pertinent part:

    "It is unlawful for an owner or operator of a place of public accommodation or an agent or employee of the owner or operator, because of the race, creed, sex, age, color, national origin, marital status, or physical or mental handicap, of any person, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities and privileges of such place of public accommodation. Nothing in this section shall be construed or interpreted to prohibit the proprietor of any establishment, or the employees thereof, from the right to deny service to any person for failure to conform to the usual and regular requirements, standards and regulations for the establishment so long as the denial is not based upon discrimination on the grounds of race, sex, age, color, creed, national origin, marital status, or physical or mental handicap. For the purpose of this subtitle, a place of public accommodation means: ... (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment...."

    Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.), Article 49B, §§ 5–8.

England in *Hurst v. Picture Theatres Ltd.*, [1915] 1 K.B. 1 (1914), the courts in the United States have generally adhered to *Leadbitter*. *Garifine v. Monmouth Park Jockey Club*, 29 N.J. 47, 148 A.2d 1, 3 (1959). In fact, in deciding *Greenfeld*, this Court distinguished the *Hurst* case and followed the rule of *Leadbitter*. *Greenfeld*, 190 Md. at 101, 57 A.2d at 336. Appellant's argument that *Greenfeld* somehow erroneously failed to recognize a then existing right of access is without merit. *Greenfeld* is consistent with the majority of case law which has upheld the proprietor's right to exclude. *See Garifine v. Monmouth Park Jockey Club*, 29 N.J. 47, 148 A.2d 1 (1959); *Madden v. Queens County Jockey Club*, 296 N.Y. 249, 72 N.E.2d 697 (1947); *People v. Licata*, 28 N.Y.2d 113, 320 N.Y.S.2d 53, 268 N.E.2d 787 (1971); *Griffin v. Southland Racing Corp.*, 236 Ark. 872, 370 S.W.2d 429 (1963); *James v. Churchill Downs, Inc.*, 620 S.W.2d 323 (Ky.Ct.App.1981); *Nation v. Apache Greyhound Park, Inc.*, 119 Ariz. 76, 579 P.2d 580 (Ct.App.1978).

Appellant relies upon *Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163, 445 A.2d 370 (1982), in which the casino was held not to have the authority to exclude a casino patron because of his strategy for playing blackjack, known as card counting. *Id.* 445 A.2d at 373. Implicit in appellant's reliance on *Uston*, must be an argument that *Uston* overruled *Garifine v. Monmouth Park Jockey Club*, 29 N.J. 47, 148 A.2d 1 (1959), which held that the common law of exclusion, as applied to racetracks, applied in New Jersey. *Id.* 148 A.2d at 6. In *Uston*, the Supreme Court of New Jersey held that "the Casino Control Commission, not the licensee, had the authority to determine whether 'card counters' could be excluded from the casino's gaming tables. 89 N.J. at 167, 445 A.2d [at 373]." *Marzocca v. Ferone*, 93 N.J. 509, 461 A.2d 1133, 1136 (1983) (explaining *Uston* ). The court relied in *Uston* upon the provisions of the state's Casino Control Act and its specific preemption clause. 445 A.2d at 372–73. An open question remains on the applicability of the *Uston* decision beyond the casino setting.

In *Uston,* the court did address the common law right to exclude in *dicta.* 445 A.2d at 373–75. The court noted "that the common law right of an amusement owner to exclude unwanted patrons was not absolute in light of the competing interest of the patron in reasonable access to the premises once the property owner has opened them for public use. [*Uston,* 89 N.J.] at 170–174, 445 A.2d [at 373–75]." *Marzocca,* 461 A.2d at 1136–37. But, in *Uston,* the court declined to decide the effect of their decision on *Garifine. Uston,* 445 A.2d at 375 n. 3. When it was later suggested that *Uston* overruled *Garifine sub silentio,* the Supreme Court of New Jersey distinguished the cases, rather than address the assertion that *Garifine* was overruled, even though the context of the case involved an exclusion from a racetrack.[2] *Marzocca v. Ferrone,* 186 N.J.Super. 483, 490 n. 3, 453 A.2d 228, 231–32 n. 3 (1982), *aff'd in part and rev'd in part,* 93 N.J. 509, 461 A.2d 1133, 1134 (1983) (affirmed on the jurisdictional issue and reversed on the merits). In *Marzocca* the state supreme court expressly disagreed with the lower appellate court's expansive interpretation of *Uston. Marzocca,* 461 A.2d at 1137. Instead, the supreme court limited the common law rule of *Garifine* in another way: "In *Garifine, supra,* we held that a private racetrack could legally exclude a patron if the exclusion was not based on race, creed, color, national origin or ancestry. We now limit the common law doctrine by proscribing exclusions that violate public policy."[3] *Marzocca,* 461 A.2d at 1137. Even considering this limit on the common law right, *arguendo,* in the instant appeal, appellant could not justify his claim in view of the public policy interests in protecting the integrity of thoroughbred racing by excluding those with records of prior criminal activity. More importantly, we decline to give *Uston v. Resorts*

---

**2.** The exclusion was of a racehorse rather than a patron.

**3.** The court referred to similar precedent limiting the common law doctrine of employment at will, citing *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980).

*International Hotel, supra,* the expansive interpretation urged by appellant when the Supreme Court of New Jersey has hesitated to do so.

■ Appellant's next contention that the Public Accommodations Law in some way abrogates the common law right to exclude to any extent is without support. The Maryland Public Accommodations Law, Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.), Article 49B, § 5, as well as its federal counterpart, 42 U.S.C. § 2000a (1982), are concerned with discrimination in public accommodations. Appellee concedes that a racetrack is a place of public accommodation. However, these statutes by their express terms prohibit discrimination only on the basis of race, creed, sex, age, color, national origin, marital status, or physical or mental handicap. *Id.* So long as a denial of service is not based upon discrimination on the foregoing grounds, the Maryland statute specifically states that the statute is not to be construed or interpreted to prohibit the proprietor from denying service "for failure to conform to the usual and regular requirements, standards and regulations for the establishment...." *Id.* This proviso indicates that the legislature did not intend any other change in the common law except for ending exclusions and denials of service based on the types of discrimination expressly indicated by the statute. Indeed, in the cases that addressed the issue, the courts have uniformly held that such civil rights statutes have not abrogated the common law and that a proprietor may exclude patrons for any reason except race, color, creed, and national origin. *See Garifine v. Monmouth Park Jockey Club,* 148 A.2d at 7; *Madden v. Queens County Jockey Club,* 72 N.E.2d at 698; *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 740 (6th Cir.), *cert. denied,* 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294 (1980); *see also, e.g., Bonomo v. Louisiana Downs, Inc.,* 337 So.2d 553, 558 (La.Ct.App.1976); *Jacobson v. New York Racing Association, Inc.,* 33 N.Y.2d 144, 350 N.Y.S.2d 639, 642, 305 N.E.2d 765, 767 (1973).

Appellant argues alternatively that the common law right of exclusion has been abrogated by the legislature's creation of the Maryland Racing Commission and by the rules and regulations promulgated by that Commission. The Maryland Racing Commission was created by the legislature with the "full power to prescribe rules, regulations and conditions under which all horse races shall be conducted within the State of Maryland." Maryland Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.), Article 78B, §§ 1, 11(a). The statute combined with the Commission's rules and regulations provide a comprehensive scheme for the regulation of horse racing in Maryland. Of the extensive regulations, appellant points out several of the Commission's rules in Title 09, Chapter 01 of the Code of Maryland Regulations (COMAR) that pertain to exclusions from the racetrack. Md.Admin.Code tit. 09, § .10.01.03 (1984). The regulations specifically require each racing association: to police the grounds so as to preclude admission of unauthorized persons in and around the stables, COMAR 09.10.01.03E; to exclude from the paddock, in the interest of public safety, all persons having no immediate business with horses entered, COMAR 09.10.01.03M; to prohibit the making of handbooks on its grounds, and compels the racing association to eject from the grounds and refuse admission to any owner, trainer, jockey, groom or person interested in any horse who bets with or through any such handbook, COMAR 09.10.01.03S; and to exclude tipsters from anywhere upon the grounds or buildings of the association, COMAR 09.10.01.03Z.

Appellant contends that the statute gives exclusive power to the Commission to regulate the conditions under which all races will be conducted. Further, he argues that through regulating exclusions to the extent that the rules have, the regulations and statute demonstrate that the common law right to exclude has been abrogated. We do not agree.

In *Greenfeld*, this Court acknowledged that horse racing was a minutely regulated and heavily taxed business but

noted that this did not wholly extinguish private rights and the Court upheld the right of exclusion. 190 Md. at 104, 57 A.2d at 338. Each of the regulations pointed out by appellant is addressed to protecting the integrity and honesty of betting for the public. We are not convinced that the authority to exclude tipsters and the makers of handbooks, and to exclude unauthorized persons from areas close to the competing horses and jockeys, was intended with any concern towards the common law right to exclude undesirables. Further, the right to exclude is not inconsistent with these other regulations of the Commission. Also, the appellant does not allege that the Commission's regulations are significantly more extensive than what was described by the Court as minute regulation in 1948. We note that while in some jurisdictions the racing authority has specifically addressed the general right of exclusion, the Maryland Racing Commission has not done so. Where it easily could have done so, we cannot infer any intent to abrogate the common law.

We have mentioned that in *Greenfeld* the Court held that despite heavy regulation the common law of exclusion was not changed. The courts of other jurisdictions have held similarly, even where a commission rule directly addressed the exclusion of undesirables. In *Nation v. Apache Greyhound Park, Inc.*, 119 Ariz. 76, 579 P.2d 580 (Ct.App.1978), the court held that a rule of the Arizona Racing Commission [4] similar to the Maryland regulation did not persuade the court that the common law rule of exclusion should be changed. *Id.* 579 P.2d at 582. The Arizona court commented on the Rhode Island case of *Burrillville Racing Association v. Garabedian*, 113 R.I. 134, 318 A.2d 469

---

**4.** " 'The Permittee shall furnish an adequate police force whose duty it shall be to maintain order and exclude from the grounds all handbooks, touts, operators of gambling devices, or others whose conduct is objectionable to the public or contrary to the best interest of racing, including all persons ruled off by the stewards.' Arizona Code of Rules and Regulations, R. 4–27–03." 579 P.2d at 582.

(1974). In *Burrillville* the Rhode Island Supreme Court held that a statute which provided that a racetrack licensee "shall have the right to refuse admission to ... any person or persons whose presence ... is, in the sole judgment of said licensee ... undesirable ..." R.I.Gen.Laws § 41–3–17 (1969), changed the common law rule and required that a determination be made as to whether in fact the person to be ejected is an undesirable. 318 A.2d at 472. The Arizona court refused to follow *Burrillville* "for the reason it is simply wrong" and noted the Rhode Island statute was merely a codification of the common law rule. *Nation*, 579 P.2d at 582. *See also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d at 740 n. 3.

In *James v. Churchill Downs, Inc.*, 620 S.W.2d 323 (Ky.Ct.App.1981), the Kentucky court held that a statute vesting the racing commission with the authority to exclude undesirables from racetracks did not abrogate the common law right. *Id.* at 325. Because the statute did not manifest an intention to abrogate the common law right it was unwarranted for the court to conclude that the statute had the effect of abrogating an identical common law right. *Id.* The court viewed the statute as actually manifesting an intention to extend the common law right beyond the proprietor to vest the authority to exercise the right additionally in the racing commission. *Id.*

█ We agree with the foregoing analysis. Further, in Maryland we are not even presented with a regulation specifically concerning the exclusion of undesirables. Therefore, no evidence is present that suggests a legislative or administrative agency intent to abrogate the common law. The common law right of a proprietor of a racetrack to exclude a patron for whatever reason except race, creed, color, age, sex or national origin remains intact in Maryland. Appellees were within their rights in excluding the appellant from Maryland racetracks.

## II

Alternatively, appellant argues that his exclusion from the racetrack violates his constitutional rights to due process and equal protection. This is so, he contends, because (1) the racing commission, by failing to promulgate rules regarding which individuals may be refused admission on the grounds that they have been involved with or convicted of illegal gambling activities, has approved of the discriminatory action of the appellees; and (2) because his procedural due process right was violated since he was not given a hearing before he was deprived of his property interests.

Assuming, *arguendo,* that the conduct here constitutes state action, nevertheless, appellant's contentions are without merit.

█ The record reveals that the issue of no hearing was not raised before or decided by the trial court; thus it is not properly before us. Md.Rule 885. Additionally, we observe that we are unable to discern from the record that Mr. Silbert ever requested any form of a hearing before the appellees or the Maryland Racing Commission.

Further, appellant claims a violation of his right to equal protection, but he concedes he is not a member of a "suspect class" nor has the challenged activity impinged upon some "fundamental" right. Therefore, the Court need not apply the "strict scrutiny" test but will apply the "rational relationship" test in determining whether a constitutional violation has occurred. *See Vance v. Bradley,* 440 U.S. 93, 96–98, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171, 175–77 (1979); *Attorney General v. Waldron,* 289 Md. 683, 426 A.2d 929 (1981). Appellant does argue, however, that even under the "rational relationship" test, the state had arbitrarily and unreasonably denied him the right to freely enter a place of public accommodation. We disagree.

In *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), the Supreme Court made clear that challenged activity is not objectionable if it

bears a rational relationship to some important governmental interest. *See also Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Vance, supra.*

In *Jacobson v. Maryland Racing Commission,* 261 Md. 180, 183, 274 A.2d 102, 103 (1971), we recognized that "[h]orse racing is an endeavor and undertaking that necessarily must be the subject of intensive, extensive, and minute regulation." Further, we recognized that controlled legalized gambling must be kept as far above suspicion as possible. *See also Maryland Racing Commission v. McGee,* 212 Md. 69, 76, 128 A.2d 419, 423 (1957); *Mules v. Maryland Racing Commission,* 30 Md.App. 533, 353 A.2d 664, *cert. denied,* 278 Md. 729 (1976).

What appellant basically complains about here is that, "assuming, *arguendo,* that the state has a legitimate goal in prohibiting those individuals who have been convicted of crimes such as burglary or robbery, or of crimes involving illegal gambling activities, the means used to attain that result should be to exclude 'across the board' all individuals in this category rather than to permit certain individuals access to the track who have been classified as 'undesirable' and to deny access to others." The record shows that appellee Ramsey, who was responsible for track security, did, on occasion, allow persons access even though they had similar backgrounds to appellant, because they were "informers." In our view, such action by Ramsey was not unreasonable as it is clearly recognizable that informers play an important and useful role in crime detection and punishment. In other words, Ramsey's action regarding the denial of access to appellant had a rational basis, and this is all that is required.

Accordingly, we find no constitutional violation present in this case.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.