**Eric BROOKS, Jeffrey Yass and Kenneth Brodie, Plaintiffs-Appellants,**

v.

**CHICAGO DOWNS ASSOCIATION, INC., d/b/a Sportsman's Park, Defendant-Appellee.**

No. 85–2265.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1986.

Decided May 20, 1986.

Francis X. Grossi, Jr., Eric N. Landau, James E. Hanlon, Jr., Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiffs-appellants.

George S. Lalich, Nash & Lalich, Chicago, Ill., for defendant-appellee.

Before CUDAHY, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

This is a case of first impression on whether under Illinois law the operator of a horse race track has the absolute right to exclude a patron from the track premises for any reason, or no reason, except race, color, creed, national origin, or sex. We find that Illinois follows the common law rule and would allow the exclusion. The court below is thus affirmed.

## I

Plaintiffs are citizens of Pennsylvania who have formed a Pennsylvania partnership whose sole purpose is to pool the assets of the partners in order to place bets at horse racing tracks throughout the country. The plaintiffs are self-proclaimed expert handicappers, even though on the approximately 140 days they have bet at various race tracks they have ended up with net losses on 110 of those days. This case is about a bet they were not allowed to make.

The defendant is a private Illinois corporation licensed by the State of Illinois to conduct harness racing at Sportsman's Park race track in Cicero, Illinois. At various times during the racing season, Sportsman's Park conducts a parimutual pool known as "Super Bet." In order to win the Super Bet pool, one must select the first two finishers of the fifth and sixth races and the first three finishers of the seventh race. The Super Bet pool is able to increase quickly and substantially because if the pool is not won on any given day, the total amount wagered is rolled over and added to the Super Bet purse for the next racing date. For example, in April of 1985 the plaintiffs, using their method for handicapping horses, placed bets on the Super Bet totalling $60,000. They picked the right horses and took home approximately $600,000.

In late July, 1985 the president of Chicago Downs ordered two of the plaintiffs (Jeffrey Yass and Kenneth Brodie) barred from Sportsman's Park just as they were seeking to place a $250,000 wager in the Super Bet. After the plaintiffs had been barred from Sportsman's Park, the Park's counsel informed them that they would be denied entry to all future racing dates at the Park. The plaintiffs then filed suit

seeking injunctive relief that would prohibit the defendant from barring them from entering the race track premises. Sportsman's Park filed a motion to dismiss the complaint on the ground that under Illinois law the operator of a proprietary race track has the absolute right to exclude a patron from the track premises for any reason except race, creed, color, national origin, or sex. The trial court agreed with the defendants and granted their motion to dismiss, from which the plaintiffs now appeal. We affirm.

## II

■ Under the principles set forth in *Erie Railroad Company v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938), as a federal court exercising diversity jurisdiction we will follow the law of the state in which the action was brought, which is in this case the law of Illinois. Because the Illinois Supreme Court has never directly confronted the issue of whether a private race track may exclude a patron without just cause, we must take what they have said, what Illinois appellate courts have said, and then the decisions of other states on the same issue, in order to formulate our holding. *In re Air Crash Disaster Near Chicago*, 701 F.2d 1189, 1197 (7th Cir.), *cert. denied sub nom.*, 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983); *Robak v. United States*, 658 F.2d 471, 475 (7th Cir.1981).

The parties do not contest the Illinois Supreme Court's holding that a race track operator has the right to exclude patrons *for good cause*. *Phillips v. Graham*, 86 Ill.2d 274, 56 Ill.Dec. 355, 427 N.E.2d 550 (1981). But in this case, the race track argues that it should be able to exclude a patron absent any cause at all, as long as it does not do so on the basis of race, color, creed, national origin, or sex. Under the defendant's theory, because the race track is a privately owned place of amusement it may exclude someone simply for wearing a green hat or a paisley tie. It need give no reason for excluding the patron, under its version of the common law, because it is not a state-granted monopoly, but a state-regulated licensee operating on private property.

The most recent Illinois Supreme Court case to touch on this issue was *Phillips v. Graham*, 86 Ill.2d 274, 56 Ill.Dec. 355, 427 N.E.2d 550 (1981). In *Phillips* several harness racing drivers, owners, and trainers were excluded by formal Order of the State Racing Board from all race tracks in the state because they had been indicted for bribery. The Illinois Supreme Court held first that the plaintiff's were not deprived of procedural due process by their exclusion from the race tracks without a prior evidentiary hearing. Second, the Court held that the authority given organization licensees (such as race tracks) to exclude occupation licensees (such as jockeys) from their private property was not an unconstitutional delegation of legislative power. Paragraph 9(e) of the Illinois Horse Racing Act of 1975 states:

> The power to eject or exclude occupation licensees [trainers, jockeys, owners, etc.] may be exercised for just cause by the organization licensee [race track] or Board subject to subsequent hearing by the Board, as to the propriety of said exclusion.

Ill.Rev.Stat., ch. 8, par. 37–9(e) (1985). The addition of this section to the Act followed closely on the heels of *Cox v. National Jockey Club*, 25 Ill.App.3d 160, 323 N.E.2d 104 (1974) and apparently codifies its holding.

The Court in *Phillips* cited the appellate court holding in *Cox* with approval and an explanation of that case is crucial to an understanding of *Phillips*. The plaintiff in *Cox* was a jockey licensed by the Illinois Racing Board. During the course of the defendant race track's annual meeting, it excluded Cox from its track, and thus foreclosed him from accepting mounts on horses he had been under contract to ride during the meet. Cox sought injunctive relief prohibiting the track from continuing to exclude him and directing that it permit him to ride unless the track could prove "just cause" for his exclusion. The race

track moved to dismiss the complaint on the ground that as a private corporation it could exclude any person from its premises or deny any person racing privileges for any reason except race, color, creed, sex, or national origin. The trial court granted the relief sought by Cox and the appellate court affirmed.

The *Cox* court differentiated between the right of a track to exclude a licensee and its right to bar a patron. The track had argued that its common law right to exclude a patron without reason applied equally to a licensee. Although acknowledging precedent which held that the track could exclude a patron without reason or justification, the court refused to extend that authority to cover a licensee, stating:

> The defendants have also cited the cases of *Madden v. Queens County Jockey Club*, 296 N.Y. 249, 72 N.E.2d 697 (1947) and *People v. Licata*, 28 N.Y.2d 113, [320 N.Y.S.2d 53,] 268 N.E.2d 787 (1971), in which the courts upheld the right of the owners of a race track to exclude patrons from attending races without reason or justification so long as the exclusion was not based on race, creed, color or national origin. *However, these cases involved patrons and not a jockey* who was being arbitrarily deprived of his fundamental right to engage in his chosen occupation. We do not find *Madden* and *Licata* persuasive.

56 Ill.Dec. 355, 323 N.E.2d at 106. (Emphasis added.)

The Illinois Supreme Court in *Phillips* found that the codification in 9(e) of the *Cox* holding was not an unconstitutional delegation of a recognized legislative power because there was in fact no attempted grant of legislative power to an administrative agency or private person. The authority to exclude came from the common law. *Phillips*, 56 Ill.Dec. 355, 427 N.E.2d at 556. The court stated:

> There is no such delegation of a recognized legislative power here. The right to exclude patrons from a private enterprise, here a racetrack, has long been recognized at common law. Though it cannot be said that section 9(e), which goes further and permits the exclusion of occupation licensees, is a precise codification of the common law right, it is clear that the authority to exclude here is not derived from some recognized legislative power, unique to the legislature, that has been delegated to organization licensees. It is simply, as the State argues, a grant of authority by the legislature.

56 Ill.Dec. 355, 427 N.E.2d at 556–57.

■ The language of *Phillips* and *Cox* lead us to conclude that Illinois follows the common law rule regarding the exclusion of patrons, as opposed to the exclusion of licensees which is governed by the "just cause" rule codified in 9(e). Of the cases cited by the Illinois courts as demonstrating the common law rule, *Madden v. Queens County Jockey Club*, 296 N.Y. 249, 72 N.E.2d 697 (Ct.App.), *cert. denied*, 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 346 (1947), is the most explicit and most cited. The plaintiff, "Coley" Madden, who claimed to be a professional "patron of the races," was barred from the defendant's Aqueduct Race Track under the mistaken belief that he was "Owney" Madden, reputed to be the fabled Frank Costello's bookmaker. Coley Madden brought suit for declaratory judgment and contended that as a citizen and taxpayer he had the right to enter the track and patronize the races. The defendant moved to dismiss on the ground that it had an unlimited right of exclusion. The trial court granted plaintiff's motion and entered an order enjoining the defendant from barring Coley Madden from its race track. The appellate division reversed, 269 App.Div. 644, 58 N.Y.S.2d 272, and the New York Court of Appeals affirmed the appellate division's reversal of the trial court. The Court of Appeals framed the question: "Whether the operator of a race track can, without reason or sufficient excuse, exclude a person from attending its races." 72 N.E.2d at 698. Its answer: "In our opinion he can; he has the power to admit as spectators only those

whom he may select, and to exclude others solely of his own [volition,] as long as the exclusion is not founded on race, creed, color or national origin." 72 N.E.2d at 698.

The court went on to explain the common law:

> At common law a person engaged in a public calling, such as innkeeper or common carrier, was held to be under a duty to the general public and was obliged to serve, without discrimination, all who sought service. [Citations omitted.] On the other hand, proprietors of private enterprises, such as places of amusement and resort, were under no such obligation, enjoying an absolute power to serve whom they pleased. [Citations omitted.] *A race track, of course, falls within that classification.*

72 N.E.2d at 698 (emphasis added).

Madden also claimed a right to enter the track based upon the constitutional guaranty of equal protection of the laws, arguing that the track's license to conduct wagering made it an administrative agency of the state. The court answered that to adopt plaintiff's position would make it equally tenable to argue that every licensee (such as a cab driver, a barber, or a liquor dealer) is an administrative agency of the state simply because he pays a fee for his license. The court also rejected Madden's argument that a license to conduct horse racing is equivalent to a franchise or a monopoly to perform a public service and that Coley Madden, as a member of the public, could not rightfully be excluded. The court held that a race track is not a public utility but is a place of amusement—which has never been regarded as a function or purpose of government.

■ We too find that the defendant in this case is not a state granted franchise or monopoly. In *Cox v. National Jockey Club*, the Illinois appellate court stated:

> By virtue of Section 2 of the Horse Racing Act [Ill.Rev.Stat. ch. 8, ¶ 37(b)], the defendant, National Jockey Club, had a quasi-monopoly over thoroughbred horse racing during the period of the subject racing meet and therefore, defendants

could not arbitrarily and without reason or justification deny plaintiff the opportunity of participating in its meet.

323 N.E.2d at 106. Section 2 states in essence that race tracks within 35 miles of each other may not have horse races on the same day. The defendant here is granted only a license for 75 days of racing in any one year. That license is imposed only to regulate and raise revenue, as opposed to a franchise which grants a special privilege that does not belong to an individual as a matter of common right. See Ill.Rev.Stat. ch. 8; *Madden*, 72 N.E.2d at 699; *Garifine v. Monmouth Park Jockey Club*, 29 N.J. 47, 148 A.2d 1 (S.Ct.1959). The court in *Cox* held that the race track had a "quasi monopoly" only with regard to a *licensee*—a jockey who was alleging that he was being denied the right to earn a livelihood—rather than a patron of the offered amusement. While we pass no judgment on the language in *Cox*, we note again that the relationship between the race track and licensed jockeys is substantially different than the relationship between the race track and its patrons. Any one race track may or may not have a "quasi-monopoly" (a term that is subject to many interpretations) over opportunities available to jockeys, owners, or drivers, but they do not have a true monopoly over opportunities for the plaintiffs to bet on horses. This difference is recognized and emphasized in *Phillips, Cox*, and the Illinois statute, and is dispositive of this case.

■ In holding that Illinois follows the traditional common law rule we are not unmindful that several other states have questioned that rule as a matter both of law and of policy. For example, many of the states that follow the common law rule have used language broader than the facts in the case before them required. While these cases state that a proprietor has the absolute right to exclude, the facts of the case show that just cause existed to exclude the patron. *See, e.g., Silbert v. Ramsey*, 301 Md. 96, 482 A.2d 147 (1984) (patron excluded on the basis of his prior conviction for violation of state lottery laws); *James*

*v. Churchill Downs, Inc.,* 620 S.W.2d 323 (Ky.App.1981) (excluded patron was a convicted bookmaker); *Tropical Park, Inc. v. Jack,* 374 So.2d 639 (Fla.App.1979) (patron alleged to have "known underworld connections" was rightfully excluded); *Burrillville Racing Association v. Garabedian,* 113 R.I. 134, 318 A.2d 469 (1974) (excluded patron had prior conviction for income tax evasion in connection with a wager messenger operation); *People v. Licata,* 28 N.Y.2d 113, 268 N.E.2d 787 (1971) (defendant had prior convictions for bookmaking); *Flores v. Los Angeles Turf Club, Inc.,* 55 Cal.2d 736, 13 Cal.Rptr. 201, 361 P.2d 921 (1961) (plaintiff was a convicted bookmaker). But that fact only demonstrates that proprietors of amusement facilities, whose very survival depends on bringing the public into their place of amusement, are reasonable people who usually do not exclude their customers unless they have a reason to do so. What the proprietor of a race track does not want to have to do is *prove* or *explain* that his reason for exclusion is a *just* reason. He doesn't want to be liable to Coley Madden solely because he mistakenly believed he was a mobster. The proprietor wants to be able to keep someone off his private property even if they only *look like* a mobster. As long as the proprietor is not excluding the mobster look-a-like because of his national origin (or because of race, color, creed, or sex), then the common law, and the law of Illinois, allows him to do just that.

We also choose not to follow the arguable—but not clear—abandonment of the common law rule in New Jersey in the case of *Uston v. Resorts International Hotel, Inc.,* 89 N.J. 163, 445 A.2d 370 (1982). In 1959 the New Jersey Supreme Court decided *Garifine v. Monmouth Park Jockey Club,* 29 N.J. 47, 148 A.2d 1 (Sup.Ct.1959), which was an appeal from the trial court's refusal to grant the plaintiff injunctive relief from his exclusion from Monmouth Park race track. The defendant race track, relying on *Madden,* moved to dismiss the complaint on the ground that it had "an absolute right" to exclude the plaintiff. On appeal, the plaintiff contended that the operator of a race track should not have the common law right to exclude a patron without reasonable cause and that under the New Jersey Civil Rights Act the operator did not have such authority. In a scholarly opinion the court traced the genesis of the right of race tracks to exclude patrons without justifying the exclusion:

There was a time in English history when the common law recognized in many callings the duty to serve the public without discrimination. [Citations omitted.] With the passing of time and the changing of conditions, the common law confined this duty to exceptional callings where the needs of the public urgently called for its continuance. Innkeepers and common carriers may be said to be the most notable illustrations of business operators who, both under early principles and under the common law today, are obliged to serve the public without discrimination. [Citations omitted.] On the other hand, operators of most businesses, including places of amusement such as race tracks, have never been placed under any such common-law obligation, for no comparable considerations of public policy have ever so dictated. *See Madden v. Queens County Jockey Club,* 296 N.Y. 249, 72 N.E.2d 697, 1 A.L.R.2d 1160 (Ct.App. 1947), *cert. denied* 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 346 (1947); *Greenfield v. Maryland Jockey Club,* 190 Md. 96, 57 A.2d 335 (Ct.App.1948). *Cf. Marrone v. Washington Jockey Club,* 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679 (1913)....

No holdings contrary to the foregoing have been cited by the plaintiff; and although he has urged that the defendant's common-law right of exclusion from its race track should be limited because as a licensee "it has secured the advantage of a State monopoly" we find no force in his contention. *See Madden v. Queens County Jockey Club, supra; Greenfeld v. Maryland Jockey Club, supra....* The burden of the plaintiff's present attack is on the common-law doctrine which he states should be altered to

afford to him a right of admission to the race track in the absence of affirmative legal proof by the defendant that there is good cause for his exclusion. We are satisfied that, without regard to views which may be entertained in other types of cases, there has been no showing made here for such alteration....

148 A.2d at 6–7. However, in 1982 the New Jersey Supreme Court decided *Uston* in which the plaintiff was a practitioner of a strategy of playing blackjack known as "card counting." The defendant operated a gambling casino licensed pursuant to the New Jersey Casino Control Act. The defendant excluded Uston from the blackjack tables in its casino because of Uston's strategy of "card counting." The New Jersey Supreme Court held that the Casino Control Act gave the Casino Control Commission the exclusive authority to exclude patrons based upon their strategies for playing licensed casino games and that any common law right the defendant may have had to exclude Uston for these reasons was abrogated by the Act and outweighed by Uston's right of access. *Uston*, 445 A.2d at 372.

In *Marzocca v. Ferone*, 93 N.J. 509, 461 A.2d 1133 (1983), the owner of a harness race horse was barred from racing that horse at Freehold Raceway in New Jersey. The appellate court determined that *Uston* overruled *Garifine v. Monmouth Park Jockey Club, sub silentio,* and remanded the case to the trial court to hear evidence as to whether the race track's exclusion was reasonable. The case was then appealed to the New Jersey Supreme Court, where the court clarified its decision in *Uston* and reversed the appellate court, stating:

> Notwithstanding the *dicta* in *Uston,* we must part company with the court below on the issue of Freehold's right to exclude. Without commenting on the status of the law in the amusement owner/patron context, we hold that the racetrack's common law right to exclude exists in the context of this case, i.e., where the relationship [is] between the track management and persons who wish to perform their vocational activities on the track premises.

461 A.2d at 1137. Therefore, it is clear that New Jersey has not *per se* abandoned the common law rule but has adapted it, in a limited fashion, to the particular needs of its casino industry. New Jersey has not gone as far as Illinois did in *Cox,* and in the Illinois Racing Statute, but they give no reason why the patron is more protected than the licensee. The law of New Jersey does not directly conflict with the law of Illinois that we inferred from *Phillips* and *Cox,* but to the extent that it is different, the differences are further evidence that Illinois follows the common law approach.

■ However, the New Jersey decisions do paint the wider policy picture of which our decision today is a part. As a policy matter, it is arguably unfair to allow a place of amusement to exclude for any reason or no reason, and to be free of accountability, except in cases of obvious discrimination. In this case, the general public is not only invited but, through advertising, is encouraged to come to the race track and wager on the races' outcome. But the common law allows the race track to exclude patrons, no matter if they come from near or far, or in reasonable reliance on representations of accessibility. We may ultimately believe that market forces would preclude any outrageous excesses— such as excluding anyone who has blond hair, or (like the plaintiffs) who is from Pennsylvania, or (even more outrageous) who has $250,000 to spend in one day of betting. But the premise of the consumer protection laws that the New Jersey Supreme Court alluded to in *Uston* and *Marzocca* recognizes that the reality of an imperfect market allows numerous consumer depredations. Excluding a patron simply because he is named Adam Smith arguably offends the very precepts of equality and fair dealing expressed in everything from the antitrust statutes to the Illinois Consumer Fraud and Deceptive Business Practice Act. Ill.Rev.Stat. ch. 121½, ¶¶ 262–72.

But the market here is not so demonstrably imperfect that there is a monopoly or any allegation of consumer fraud. Consequently, there is no such explicit legislative directive in the context of patrons attending horse races in Illinois—so the common law rule, relic though it may be,[1] still controls. Therefore, within the prohibitions of *Erie*, the language of the Illinois cases, and the lack of language from the Illinois legislature, we hold that the common law rule is the law of Illinois.

### III

For the foregoing reasons the court below is affirmed.

---

1. As the New Jersey Supreme court noted in *Uston*, the rise of the American common law right to exclude without cause alarmingly corresponds to the fall of the old segregation laws. However, that is clearly not an issue in this case because the legislature has justly limited the absolute right to exclude to cases not involving exclusion based on race, creed, color, national origin, or sex. *Uston*, 445 A.2d at 374 n. 4.